NO. 03-50549

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

C.A. NO. A 01CA 59 1 JN (Consolidated No. A-02 CV 793 JRN)

---

WOMACK+HAMPTON ARCHITECTS, L.L.C.
                                    Plaintiff—Appellant
v.
METRIC HOLDINGS LTD., et al.
                                    Defendants—Appellees

---

Consolidated with Case No. 03-50859

WOMACK+HAMPTON ARCHITECTS, L.L.C.
                                    Plaintiff—Appellee
v.
METRIC HOLDINGS LTD., et al.
                                    Defendants—Appellants

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS IN C.A. NO. A 01CA 59 1 JN
(Consolidated No. A-02 CV 793 JRN)
JUDGE JAMES R. NOWLIN

---

**BRIEF OF APPELLANT, WOMACK+HAMPTON ARCHITECTS, L.L.C.**

---

Gregory M. Luck
Thomas W. Sankey
SANKEY & LUCK, L.L.P.
6200 Chase Tower, 600 Travis
Houston, Texas 77002
(713) 224-1007 - Telephone
(713) 223-7737 – Facsimile

Timothy N. Trop
TROP, PRUNER & HU, P.C.
8554 Katy Freeway, Suite 100
Houston, Texas 77024
(713) 468-8880 - Telephone
(713) 468-8883 - Facsimile


Terry L. Scarborough
HANCE, SCARBOROUGH, WRIGHT,
WOODWARD & WEISBART, L.L.P.
111 Congress Avenue, Suite 500
Austin, Texas 78701
(512) 479-8888 - Telephone
(512) 482-6891 - Facsimile

# CERTIFICATE OF INTERESTED PERSONS

Pursuant to Fifth Circuit Rule 28.2.1, Counsel for the appellant, Womack+Hampton Architects, L.L.C., certifies the following:

1.    The full name of every party or amicus represented by me is:

    Womack+Hampton Architects, L.L.C.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

    Womack+Hampton Architects, L.L.C.

    Other Parties In Interest (Appellees):

    Metric Holdings Ltd., Partnership; Chiles Architects, Inc.; Trammell Crow Residential Company; TCR Operating Company, Inc.,; TCR Metric, L.P.; South Central RS, Inc.,; TCR South Central, Inc., TCR South Central 1995, Inc.; TCR South Central Division L.P.; TCR Metric Construction Ltd. Partnership; Gary Chiles; Robert Buzbee; Lewis Bunch; Kenneth J. Valach; Perry Wilson; Chris Wheeler; J. Ronald Terwilliger, SDT Architects, Inc.

3.    The parent companies, subsidiaries (except wholly owned subsidiaries), and affiliates that have issued shares to the public, of the party or amicus curiae represented by me are:

    Womack+Hampton Architects, L.L.C.

4.    The names of the law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Counsel for Appellees:
 Rick Harrison
 FRITZ BYRNE HEAD & HARRISON, L.L.P.
 98 San Jacinto, Suite 2000
 Austin, Texas  78701
 (512) 476-2020
 (512) 477-5267 (fax)

 Richard D. Yeomans
 GRAVES DOUGHERTY HEARON
    & MOODY, L.L.P.
 515 Congress Avenue, Suite 2300
 Austin, Texas  78701
 (512) 480-5600
 (512) 478-1976 (fax)

 John P. Cahill
 HAYS MCCONN RICE & PICKERING
 1200 Smith Street, Suite 4200
 Houston, Texas  77002
 (713) 654-1111
 (713) 650-0027 (fax)

Counsel for Appellants:
Gregory M. Luck
Thomas W. Sankey
SANKEY & LUCK, L.L.P.
6200 Chase Tower, 600 Travis
Houston, Texas 77002
(713) 224-1007 - Telephone
(713) 223-7737 - Facsimile

Timothy N. Trop
TROP, PRUNER & HU, P.C.
8554 Katy Freeway, Suite 100
Houston, Texas 77024
(713) 468-8880 - Telephone
(713) 468-8883 - Facsimile

Terry L. Scarborough
HANCE, SCARBOROUGH, WRIGHT,
WOODWARD & WEISBART, L.L.P.
111 Congress Avenue, Suite 500
Austin, Texas 78701
(512) 479-8888 - Telephone
(512) 482-6891 - Facsimile


Dated: _____        _____
                                      Gregory M. Luck
                                      Thomas W. Sankey
                                      SANKEY & LUCK, L.L.P.
                                      600 Travis, Suite 6200
                                      Houston, Texas   77002
                                      (713) 224-1007 - Telephone
                                      (713) 223-7737 - Facsimile

                                      Timothy N. Trop
                                      TROP, PRUNER & HU, P.C.
                                      8554 Katy Freeway, Suite 100
                                      Houston, Texas 77024
                                      (713) 468-8880 - Telephone
                                      (713) 468-8883 - Facsimile

                                      Terry L. Scarborough
                                      HANCE, SCARBOROUGH, WRIGHT,
                                      WOODWARD & WEISBART, L.L.P.
                                      111 Congress Avenue, Suite 500
                                      Austin, Texas 78701
                                      (512) 479-8888 - Telephone
                                      (512) 482-6891 - Facsimile

                                      ATTORNEYS FOR PLAINTIFF
                                      WOMACK+HAMPTON ARCHITECTS, L.L.C.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellant, Womack+Hampton Architects, L.L.C., respectfully requests oral argument pursuant to Fed. R. App. P., Rule 34(a)(1) and Fifth Circuit Rule 28.2.4.

This appeal concerns the issue of whether a license to re-use copyrighted works was transferred under operative agreements between the parties, and whether use falling outside the express scope of that license gives rise to an action for copyright infringement.

Oral discussion of the facts and the applicable precedent would benefit the Court.

# <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PERSONS ..........................................................i

STATEMENT REGARDING ORAL ARGUMENT .............................................iv

TABLE OF CONTENTS.........................................................................v

TABLE OF AUTHORITIES ................................................................. viii

STATEMENT OF JURISDICTION........................................................1

STATEMENT OF THE ISSUES ON APPEAL .......................................2

STATEMENT OF THE CASE................................................................3

STATEMENT OF FACTS .....................................................................5

      A.     The Parties ...............................................................5

      B.     The Owner/Architect Agreements ........................................7

      C.     TCR Re-Used And Modified And
             Induced Re-Use And Modification
             Of WHA's Copyrighted Plans By Chiles............................10

      D.     TCR Re-Used And Modified And
              Induced Re-Use And Modification
             Of WHA's Copyrighted Plans By SDT .............................10

      E.     Course Of Proceedings Below .............................................11

SUMMARY OF ARGUMENT ..............................................................15

ARGUMENT ........................................................................................16

      A.     Standard Of Review ...........................................................16

B.  TCR, Chiles And SDT Exceeded The
    Scope of Any License Granted Under
    The Owner/Architect Agreements ......................................................17

    1.  A Copyright License Must Be Strictly
        Construed According To The Express
        Terms Of The Conveyance ......................................................18

    2.  Any Alleged Re-Use License Did Not
        Grant TCR The Right To Retain Chiles
        And SDT To Copy, Re-Use And Modify
        WHA's Copyrighted Plans ......................................................19

C.  The Trial Court Erred in Holding
    That The Owner/Architect Agreements
    Conveyed A Re-Use License To TCR
    Absent Payment Of The Re-Use Fee ..................................................25

    1.  Payment Of The Re-Use Fee Was A Condition
        Precedent To The Grant Of A Re-Use License .......................25

    2.  Section IX(B) Of The Owner/Architect
        Agreements Solely Conveyed An Option
        For A Re-Use License...............................................................33

    3.  TCR's Failure To Pay The Re-Use Fee
        Prescribed Under the Owner/Architect
        Agreements Gives Rise To An Action
        For Copyright Infringement....................................................34

    4.  Any Re-Use License Did Not
        Extend to Chiles And SDT ......................................................35

CONCLUSION ..................................................................................................36

CERTIFICATE OF SERVICE AND FILING .......................................................38

CERTIFICATE OF COMPLIANCE.........................................................................39

# TABLE OF AUTHORITIES

**Cases**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)...........................................16

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) .......................................................16

Chambless v. Travelers Lloyds of Tex. Ins. Co.,
  123 F.Supp. 2d 1028 (N.D. Tex. 2000).........................................................33, 34

Cohen v. Paramount Pictures Corp., 845 F.2d 851 (9th Cir 1988) .......18, 20, 30, 31

Feist Publications v. Rural Tel. Serv. Co., 499 U.S. 340 (1991)............................36

Foad Consulting Group, Inc. v. Musil Govan Azzalino,
  270 F.3d 821 (9th Cir. 2001) .................................................................30

Gilliam v. American Broadcasting Cos.,
  538 F.2d 14 (2nd Cir. 1976) ........................................22, 23, 24, 25, 31

Henry v. A.B. Dick Co., 224 U.S. 1 (1912)......................................................19, 20

In re Cavalier Indust., Inc., 2001 Bankr. LEXIS 366 (E.D.Pa. 2001) .....................29

In re CFLC, Inc., 89 F.3d 673 (9th Cir. 1996)..........................................................35

Inslaw, Inc. v. U.S., 40 Fed. Cl. 843 (Fed. Cl. 1998) ..................................20, 24, 25

Irwin v. American Interactive Media, Inc.,
  1994 U.S. Dist. LEXIS 16223 (C.D. Cal. 1994) .................................................33

Johnson v. Jones, 149 F.3d 494 (6th Cir. 1998) ......................................................28

Leggio v. Millers Nat'l Ins. Co.,
  398 S.W.2d 607 (Tex. Civ. App.-Tyler 1965, writ ref'd n.r.e.)..........................33

McRoberts Software, Inc. v. Media 100, Inc.,
    2001 U.S. Dist. LEXIS 16794 (S.D. Ind. 2001),
    aff'd in part rev'd in part, 329 F.3d 557 (7th Cir. 2003)....................31, 32, 34, 35

Merritt-Campbell, Inc. v. RxP Prods., Inc., 164 F.3d 957 (5th Cir. 1999)........33, 34

Primesorb, Inc. v. 95 Corp.,
    2000 Tex. App. LEXIS 2259 (Tex. App. - Houston [1st Dist.] 2000, n.w.h.).....34

Quintanilla v. Texas Television, Inc., 139 F.3d 494 (5th Cir. 1998)......................25

S.O.S., Inc. v. Payday, Inc.,
    886 F.2d 1081 (9th Cir. 1989)......................................... 19, 20, 21, 22, 25, 28, 31

SQL Solutions, Inc. v. Oracle Corp.,
    1991 U.S. Dist. LEXIS 21097 (N.D. Cal. 1991)....................................................36

Sun Microsystems, Inc. v. Microsoft Corp., 188 F.3d 1115 (9th Cir. 1999) ..........25

TIG Ins. Co. v. Sedwick James of Washington, 276 F.3d 754 (5th Cir. 2002).......16

Young v. Equifax Credit Info. Servs. Inc., 294 F.3d 631 (5th Cir. 2002)...............16

Vault Corp. v. Quaid Software, Ltd., 847 F.2d 255 (5th Cir. 1988) .......................19

**Statutes**

17 U.S.C. § 106....................................................................................18, 19, 20, 22

17 U.S.C. § 201(d)(2)....................................................................................19, 24

17 U.S.C. § 204(a) ................................................................................................22

17 U.S.C. § 501(a) .........................................................................................18, 20

28 U.S.C. § 1291 ....................................................................................................1

28 U.S.C. §1338(a) ..................................................................................1

**Rules**

Fed. R. App. P. 4(a)(1)(A) ....................................................................1

Fed. R. App. P. 28(a)(4) ........................................................................1

Fed. R. App. P. 32(a)(7)(B)(i)..............................................................39

Fed. R. App. P. 32(a)(7)(B)(iii) ...........................................................39

Fed. R. App. P. 32(a)(7)(C) .................................................................39

Fed. R. App. P. 34(a)(1) ...................................................................... iii

Fifth Circuit Rule 28.2.4 ..................................................................... iii

**Authorities**

3 Nimmer on Copyright § 10.08 at 10-72, 73.........................................31

3 Nimmer on Copyright § 10.15[A] at 10-121 .......................................35

## <u>STATEMENT OF JURISDICTION</u>

Counsel for Plaintiff-Appellant, Womack+Hampton Architects, L.L.C. (hereinafter "WHA"), submits the following statement pursuant to Fed. R. App. P. 28(a)(4).

The District Court's jurisdiction over this action for copyright infringement filed by WHA was based on 28 U.S.C. §1338(a).

This Court has jurisdiction to hear the appeal filed by WHA under 28 U.S.C. § 1291.

WHA timely filed its appeal under Fed. R. App. 4(a)(1)(A) from a final judgment of the District Court on all of WHA's claims, which final judgment was entered on April 30, 2003.

## STATEMENT OF THE ISSUES ON APPEAL

1.     Whether Defendants' re-use of WHA's copyrighted works exceeded the scope of any re-use license granted under the Owner/Architect Agreements between WHA and Trammel Crow Residential Defendants (hereinafter "TCR").

2.     Whether Defendants' modification of WHA's copyrighted works exceeded the scope of any re-use license granted under the Owner/Architect Agreements between WHA and TCR.

3.     Whether the payment of the re-use fee set forth in the Owner/Architect Agreements between WHA and TCR was a condition precedent to any right to re-use, copy or modify WHA's copyrighted plans for architectural works for other projects.

## <u>STATEMENT OF THE CASE</u>

This is an action for copyright infringement brought by Womack+Hampton Architects, L.L.C. against Metric Holdings Ltd., Partnership, Trammell Crow Residential Company, TCR Operating Company, Inc., TCR Metric, L.P., South Central RS, Inc., TCR South Central, Inc., TCR South Central 1995, Inc., TCR South Central Division L.P., TCR Metric Construction Ltd. Partnership, Robert Buzbee, Lewis Bunch, Kenneth J. Valach, Perry Wilson, Chris Wheeler and J. Ronald Terwilliger (hereinafter collectively "TCR") and Gary Chiles and Chiles Architects, Inc. (hereinafter collectively "Chiles")  for infringement of WHA's copyrights in architectural works for projects designated THE WINDFERN, THE RESERVE AT CHEYENNE, THE RESERVE AT CHARLES PLACE and THE CAMBRIA PLACE.

As consolidated, this is also an action for copyright infringement brought by WHA against Trammell Crow Residential, Trammell Crow Residential, Company; TCR South Central 1995, Inc., TCR Los Rios Limited Partnership, Robert Buzbee, Lewis Bunch, John Zeledon, Tim Hogan (again collectively "TCR"), and SDT Architects, Inc., Thomas Stovall, and Jerry Daniels (hereinafter collectively "SDT") for infringement of WHA's copyrights in architectural works for a project designated ARBROOK PARK.

In this appeal, WHA challenges the ruling of the District Court in granting summary judgment for Defendants and denying summary judgment for Plaintiff that Defendants' <u>re-use</u> of WHA's copyrights in architectural works did not exceed the scope of any license conveyed to TCR by WHA under the Owner/Architect Agreements.

WHA further challenges the ruling of the District Court in granting summary judgment for Defendants and denying summary judgment for Plaintiff that Defendants' <u>modification</u> of WHA's copyrights in architectural works did not exceed the scope of any license conveyed to TCR by WHA under the Owner/Architect Agreements.

WHA also challenges the ruling of the District Court in granting summary judgment for Defendants and denying summary judgment for Plaintiff that the Owner/Architect Agreements conveyed a license to TCR to re-use, copy and have copied WHA's copyrighted architectural works for THE WINDFERN, THE RESERVE AT CHEYENNE, THE RESERVE AT CHARLES PLACE, THE CAMBRIA PLACE and ARBROOK PARK for other projects, absent payment of the re-use license fee prescribed in such agreements.

## STATEMENT OF FACTS

**A.    The Parties**

1.    WHA is an architectural firm located in Dallas, Texas. (A-Vol. 5, p. 1143).  WHA has designed multi-family (apartment) and commercial structures for clients throughout the United States.  (A-Vol. 5, p. 1143).

2.    Prior to the events giving rise to the underlying litigation, WHA performed architectural services for TCR for a variety of projects.  (A-Vol. 4, p. 818).  Examples of such prior services include architectural services for the creation of plans for the five projects at issue in this appeal:  THE WINDFERN, THE RESERVE AT CHEYENNE, THE RESERVE AT CHARLES PLACE, THE CAMBRIA PLACE and ARBROOK PARK.

3.    WHA has made application for and received registrations from the United States Copyright Office for various aspects of each of THE WINDFERN, THE RESERVE AT CHEYENNE, THE RESERVE AT CHARLES PLACE, THE CAMBRIA PLACE and ARBROOK PARK projects, including, inter alia, floorplan and elevation designs.  These registrations are as follows:

Cambria Place - Leasing Center, Registration No. VA 1-159-410
Reserve at Cheyenne - Building 2, Registration No. VA 1-131-226
Reserve at Charles Place, Registration No. VA 1-159-409
Windfern Building 1, Registration No. VA 1-159-408
Reserve at Cheyenne - Building 1, Registration No. VA 1-131-228
Windfern - Building II, Registration No. VA 1-159-407
Windfern Building 2, Registration Nos. VA 1-146-597 and VA 1-159-406
Reserve at Cheyenne - Building 2, Registration No. VA 1-131-227

Reserve at Charles Place, Registration No. VA 1-148-848
Arbrook Park  - Leasing Center, Registration No. VA 1-159-411
Arbrook Park - Building I, Registration No. VA 1-131-230
Arbrook Park-Building II, Registration Nos. VA 1-144-419 and VA1-151-013
Arbrook Park - Building III, Registration No. VA 1-155-772
Arbrook Park - Building I, Registration No. VA 1-131-229
Arbrook Park - Building II, Registration No.  VA 1-151-012
Arbrook Park - Building III, Registration No. VA 1-155-773.

(A-Vol. 23, pp. 5418-5461).[1]

4.     One or more TCR entities named in the underlying litigation
retained Chiles and SDT to re-use and modify WHA's copyrighted plans.  (A-Vol.
4, pp. 826 & 835). [2]

5.     Chiles has performed architectural services for TCR, including
architectural services performed in connection with an apartment project in Austin
designated "The NorthBend".  (A-Vol. 4, p. 836).

6.     SDT Architects is an architectural firm located in Houston,
Texas.  (A-Vol. 23, pp. 5395-5417).  SDT has also provided architectural services

---

[1]     WHA also registered the following works: Reserve at Cheyenne - Building 1,
Registration No. VA 1-155-874, Cambria Place, Registration No. VA 1-155-875, Windfern -
Building 1, Registration No. VA 1-155-873, and Arbrook Park - Leasing Center, Registration
No. VA-1-168-983.  These registrations, however, were not part of the record on appeal.

[2]     As referenced herein, "TCR" includes a number of interrelated companies and employees
which work for one or more of these companies.  The TCR companies named defendants in the
underlying litigation included Metric Holdings Ltd., Partnership; Trammell Crow Residential
Company; TCR Operating Company, Inc.; TCR Metric, L.P.; South Central RS, Inc.; TCR South
Central, Inc.; TCR South Central 1995, Inc.; TCR South Central Division L.P.; TCR Metric
Construction Ltd. Partnership; TCR Los Rios Limited Partnership.  The TCR employees named
in the underlying litigation include Robert Buzbee; Lewis Bunch; Kenneth J. Valach; Perry
Wilson; Chris Wheeler; and J. Ronald Terwilliger, John Zeledon and Tim Hogan.

for TCR, including services performed in connection with a project in Plano designated "Los Rios".  (A-Vol. 29, p. 6719).

### B.    The Owner/Architect Agreements

1.    In or about 1996-1998, TCR commissioned WHA to prepare architectural drawings and to render architectural services in connection with five projects designated: THE WINDFERN, THE RESERVE AT CHEYENNE, THE CAMBRIA PLACE,  THE RESERVE AT CHARLES PLACE and ARBROOK PARK.  (A-Vol. 4, pp. 824-825). WHA provided architectural services to TCR for each of these projects under separate "Owner/Architect Agreements". (A-Vol. 4, pp. 824-825 & 834).   These Agreements, identical in all respects with respect to the issues raised in the Final Judgment,[3] clearly and unambiguously provided that: (1) the architectural works prepared by WHA were prepared <u>solely</u> for use on that project; and (2) WHA retained all rights in the copyrights in such works:

    A.    <u>The Drawings, Specifications, and other documents prepared by the Architect for this project are instruments of the Architect's service for use solely with respect to this project and the Architect shall be deemed the author of these documents and shall retain all common law, statutory, and other reserved right, including copyright</u>.  The Owner shall be permitted to retain copies including reproducible copies of the Architect's Drawings, Specifications, and other documents for information and reference in connection with the Owner's use and occupancy of the Project.  The Owner's rights to the Architect's

---

[3]    A separate contract was executed for each project.  (<u>See</u> A-Vol. 5, pp. 991-1058). However, the operative portions of these contracts, save the provision for a higher re-use fee for the CAMBRIA project, are substantially identical.  (<u>See</u> A-Vol. 5, p. 976).

> Drawings, Specifications, and other Project related documents shall also extend to the Owner's Lender and Owner's equity partner, (as well as the partnership formed by Owner and such equity partner), and Architect shall, upon request, execute documents to confirm the right of such parties to have and use the Architect's Drawings, Specifications and other applicable project documents to the same extent as the Owner.

(A-Vol. 5, p. 1001) (emphasis added).

      2.      At Section IX(B), the Owner/Architect Agreements provided TCR an option to re-use WHA's architectural plans for other projects. However, Section IX (B) expressly set forth that, in order to exercise this option, TCR was first required to pay WHA an option fee:

> B.      The Owner <u>agrees not to use, copy or cause to have copied</u>, the drawings and specification prepared for this project on subsequent phases or other sites <u>without proper compensation</u> to the Architect, which shall be based upon a mutually agreed upon of $150.00 per unit (base architectural fee), plus engineering services, plus contingent additional hourly charges and expenses for plan modifications necessary to adapt these plans and specifications to other sites.

(A-Vol. 5, p. 1001) (emphasis added).

      3.      By its express terms, Section IX(B) provided that in the event that WHA and TCR agreed upon a re-use license, TCR would pay "the Architects" a base architectural fee in addition to fees for "engineering services", plus "contingent additional hourly charges and expenses". (A-Vol. 5, p. 1001). By the terms of the Owner-Architect Agreement, the "Architect" is WHA. (A-Vol. 5, p. 991).

8

4.    There is no provision in any of the Owner/Architect Agreements which allows re-use of WHA's works (1) by anyone other than WHA; and (2) "without proper compensation" to WHA.

5.    When WHA discovered Defendants' intention to re-use WHA's plans, WHA made demand for the payment of the prerequisite re-use fee contained in the Owner/Architect Agreements. (A-Vol. 4, pp. 826-827 & 835; Vol. 5, pp. 1147-1148 & 1150-1151).  WHA further informed TCR that re-use of WHA's plans was unauthorized and would constitute copyright infringement:

> As you know, Chiles Architects, Inc. has prepared, without our knowledge, Construction Documents for Trammell Crow Residential utilizing plans which are copyrighted property of Womack+Hampton Architects.  In the past, on another development in Austin, an agreement was reached between Womack+Hampton Architects, Trammell Crow Residential and Chiles Architects allowing him to utilize our designs on that development for a Use Fee which is common in this industry.  Unfortunately, no such agreement was requested nor exists for the use of our Windfern designs.

(A-Vol. 5, pp. 1150-1151, see also pp. 1147-1148, 1158) (emphasis added).

6.    TCR admittedly never paid a re-use fee for either the "Reserve at NorthBend" or "Los Rios" projects.  (A- Vol. 4, p. 820; Vol. 5, p. 1160; Vol. 27, pp. 6459-6462).

**C.    TCR Re-Used And Modified And
Induced Re-Use And Modification
Of WHA's Copyrighted Plans By Chiles**

1.    TCR commissioned Chiles to re-use, copy and modify WHA's copyrighted works for architectural plans for THE WINDFERN, THE RESERVE AT CHEYENNE, THE CAMBRIA PLACE and THE RESERVE AT CHARLES PLACE. (A-Vol. 4 pp. 826 & 835).

2.    Chiles admitted that it re-used, copied and modified schematics for the WINDFERN and CHEYENNE in creating the architectural plans for "The NorthBend" project. (A- Vol. 15, pp. 3625-3628; Vol. 16, pp. 3762 & 3764). Chiles also admitted that it copied, re-used and modified these schematics for WHA's works in preparing elevation drawings for "The NorthBend".  (A-Vol. 15, pp. 3625-3628).  Chiles further admitted that TCR admitted that it built "The NorthBend" complex using Chiles' re-use and modification of WHA's copyrighted plans for THE WINDFERN, THE RESERVE AT CHEYENNE, THE CAMBRIA PLACE and THE RESERVE AT CHARLES PLACE.  (A- Vol. 4, pp. 819-821 & 827-828).

**D.    TCR Re-Used And Modified And
Induced Re-Use And Modification
Of WHA's Copyrighted Plans By SDT**

1.    TCR commissioned SDT to re-use, copy and modify Plaintiff's copyrighted works for architectural plans for the ARBROOK PARK. (A-Vol. 29,

p. 6719).  TCR hired SDT to create building plans and construction drawings for

the "Los Rios" apartment complex which was built in Plano, Texas.  (A-Vol. 29, p.

6719).

     2.     SDT admitted that it re-used, copied and modified schematics

for the ARBROOK PARK in creating the architectural plans for the "Los Rios"

project. (A-Vol. 29, p. 6719).

     3.     SDT is not in privity of contract with TCR under any of the

Owner/Architect Agreements. (A-Vol. 29, p. 6720).

## E.   Course Of Proceedings Below

     1.     WHA brought this action for copyright infringement under the

Architectural Works Copyright Protection Act ("AWCPA"). (A-Vol. 23, pp. 5395-

5417).

     2.     WHA alleged that TCR infringed and induced infringement of

WHA's copyrights in architectural works for projects designated THE

WINDFERN, THE RESERVE AT CHEYENNE, THE CAMBRIA PLACE, THE

RESERVE AT CHARLES PLACE and ARBROOK PARK by: (1) commissioning

the creation of copies and derivative works of WHA's copyrighted works by

Chiles and SDT; and, (2) TCR's construction of "The NorthBend" and "Los Rios"

apartments which incorporate WHA's copyrighted works.  (A-Vol. 23, pp. 5395-

5417).

3.     WHA alleged that Chiles infringed WHA's copyrights in architectural works for projects designated THE WINDFERN, THE RESERVE AT CHEYENNE, THE CAMBRIA PLACE and THE RESERVE AT CHARLES PLACE by Chiles' copying, re-use and modification of those works in creating plans used in "The NorthBend" apartment complex. (A-Vol. 23, pp. 5395-5417).

4.     WHA alleged that SDT infringed its copyrights in architectural works for a project designated ARBROOK PARK by SDT's admitted copying, re-use and modification of this work in creating plans used in the "Los Rios" apartment complex.  (A-Vol. 23, pp. 5395-5417).

5.     On May 22, 2002, TCR filed a Motion for Partial Summary Judgment of the Crow Defendants on the Issue of Damages. (A-Vol. 4, pp. 804-945).  In that motion, TCR moved for judgment that Plaintiff's claims did not state an action for which copyright damages could be recovered. (A- Vol. 4, pp. 810-813).  WHA both opposed TCR's motion and cross-moved for summary judgment that it was entitled to copyright damages.  (A-Vol. 5, pp. 1111-1163).

6.     In a Report and Recommendation of The United States Magistrate Judge ("RRMJ") dated October 10, 2002, the Magistrate Judge granted TCR's motion for partial summary judgment, holding that "the amount of damages WHA may seek to recover was limited by contract, specifically the re-use fee prescribed under the Owner/Architect Agreements". (A-Vol. 17, p. 4127).  The

RRMJ was premised on the existence of an express, written license from WHA to TCR. (A-Vol. 17, pp. 4126-4127). WHA timely filed an objection to the RRMJ on October 24, 2002. (A-Vol. 17, pp. 4204-4228).

7.     On January 24, 2003, the Magistrate Judge issued an Amended Report and Recommendation of The United State Magistrate Judge. ("ARRMJ"). In the ARRMJ, the Magistrate Judge modified his prior holding to include both those actions occurring with respect to "The NorthBend" apartment complex (Austin/Chiles) and the "Los Rios" apartment complex (Plano/SDT). (A-Vol. 22, p. 5158). WHA timely filed objections to the ARRMJ on February 7, 2003. (A-Vol. 22, pp. 5320-5343).

8.     In an Order entered on February 19, 2003, the District Court adopted the ARRMJ. (A-Vol. 27, pp. 6459-6462).

9.     WHA filed a Motion for Reconsideration of the Court's February 19, 2003 Order on March 4, 2003. (A-Vol. 28, pp. 6696-6711). This Motion for Reconsideration was denied on April 22, 2003. (A-Vol. 33, p. 7761).

10.     Subsequent to the District Court's February 19, 2003 Order, Defendants filed a series of dispositive motions. On February 24, 2003, TCR filed a Motion for Summary Judgment of Trammell Crow. (A-Vol. 28, pp. 6575-6580). On February 28, 2003 Chiles filed Defendants CAI and Chiles' Second Motion For Summary Judgment and Cross-Motion for Summary Judgment. (A-Vol. 28, pp.

6585-6591).  On March 6, 2003, SDT filed Defendants SDT Architects, Inc.,
Thomas Stovall and Jerry Daniels' Motion For Summary Judgment.  (A-Vol. 29,
pp. 6718-6760).  Each of these motions sought final dismissal of all of Plaintiff's
claims based upon the adoption by the District Court of the ARRMJ.

11.     A Final Judgment was entered on April 30, 2003. (A-Vol. 33, p.
7765).

# SUMMARY OF ARGUMENT

The District Court erred in holding that Defendants' <u>re-use</u> of WHA's copyrighted works in THE WINDFERN, THE RESERVE AT CHEYENNE, THE CAMBRIA PLACE and THE RESERVE AT CHARLES PLACE projects did not exceed the scope of any re-use license granted to TCR under the Owner/Architect Agreements, and thus did not give rise to an action for copyright infringement from which copyright damages lie.

The District Court further erred in holding that Defendants' <u>modification</u> of WHA's copyrighted works in THE WINDFERN, THE RESERVE AT CHEYENNE, THE CAMBRIA PLACE and THE RESERVE AT CHARLES PLACE projects did not exceed the scope of any license granted to TCR under the Owner/Architect Agreements, and thus did not give rise to an action for copyright infringement from which copyright damages lie.

The District Court also erred in holding that the payment of the re-use fee was not a condition precedent under the Owner/Architect Agreements to the conveyance of any license to TCR to copy, re-use and/or modify WHA's copyrighted works, and thereby further erred in holding that the admitted refusal by TCR to pay such re-use fee did not give rise to a cause of action for copyright infringement.

# ARGUMENT

## A.   Standard Of Review

On a motion for summary judgment, the moving party bears the burden of showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In evaluating the merits of a motion for summary judgment, the district court must view all the evidence before it in a light most favorable to the non-movant and must further draw all reasonable inferences in favor of the non-movant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); TIG Ins. Co. v. Sedwick James of Washington, 276 F.3d 754, 759 (5th Cir. 2002).

A factual question is material if a reasonable jury could return a verdict for the nonmoving party based at least in part on its determination of the factual question.  Anderson, 477 U.S. at 248.  A genuine dispute is shown to exist if sufficient evidence is presented such that a reasonable fact finder could decide the question in favor of the nonmoving party.  (Id.)

The grant of summary judgment is reviewed de novo by this Court.  Young v. Equifax Credit Info. Servs. Inc., 294 F.3d 631, 635 (5th Cir. 2002).

**B.    TCR, Chiles And SDT Exceeded The Scope of Any License Granted Under The Owner/Architect Agreements**

The District Court erred in finding that Defendants' re-use and modification of WHA's copyrighted works did not give rise to an action for copyright infringement for which WHA could recover copyright damages.

The District Court relied upon Section IX(B) to the Owner/Architect Agreements as authority for Defendants' re-use and modification of WHA's copyrighted works.  Section IX(B), however, is clear that any re-use or modification of WHA's works could only be performed by "the Architect" since this same Section provides that "the Architect" receive, in addition to the re-use fee, fees for "engineering services", "hourly charges" and "expenses":

> B.    The Owner agrees not to use, copy or cause to have copied, the drawings and specification prepared for this project on subsequent phases or other sites without proper compensation to the Architect, which shall be based upon a mutually agreed upon of $150.00 per unit (base architectural fee), <u>plus engineering services, plus contingent additional hourly charges and expenses for plan modifications necessary to adapt these plans and specifications to other sites.</u>

(A-Vol. 5, p. 1001) (emphasis added).

Plainly, TCR would not be paying "the Architect" for "engineering services", "hourly charges" and "expenses", if anyone but "the Architect" was allowed to re-use and modify WHA's plans. Under the only possible construction

17

of Section IX(B), the sole party authorized to copy, re-use and modify WHA's

copyrighted plans, upon payment of the re-use fee, was "the Architect".

Per the plain language of these same Owner/Architect Agreements, "the

Architect" was WHA. (A-Vol. 5, p. 991).

1.    A Copyright License Must Be Strictly Construed
According To The Express Terms Of The Conveyance

The Final Judgment of the District Court was premised on the existence of

an express license granted Defendants to re-use and modify WHA's copyrighted

works.  Hence, the construction of this re-use license must be reviewed under the

constraints imposed under the Copyright Statute.  <u>Cohen v. Paramount Pictures</u>

<u>Corp.</u>, 845 F.2d 851, 854 (9th Cir 1988) (a copyright license must be construed in

accordance with the purposes underlying federal copyright law).  The Copyright

Act provides that "anyone who violates one of the exclusive rights of the copyright

owner . . . is an infringer of the copyright."  17 U.S.C. § 501(a).  The "exclusive

rights" defined under Section 106 are enumerated in 17 U.S.C. § 106.  They

include the right "to do and to authorize any of the following:

(1)    to reproduce the copyrighted work in copies...;

(2)    to prepare derivative works based upon the copyrighted work;

(3)    to distribute copies . . . of the copyrighted works to the public . . ."

17 U.S.C. § 106.

The copyright owner may transfer any or all of these rights.  17 U.S.C. §§ 106, 201(d)(2); <u>Vault Corp. v. Quaid Software, Ltd.</u>, 847 F.2d 255, 258 (5th Cir. 1988)(The "owner of a copyrighted work has the exclusive right to reproduce the work in copies, to prepare derivative works based on the copyrighted work, to distribute copies of the work to the public, and, in the case of certain types of works, to perform and display the work publicly.").

Federal copyright law mandates that any conveyance of rights in copyrightable subject matter be strictly construed to preserve rights in the copyright holder.  <u>S.O.S., Inc. v. Payday, Inc.</u>, 886 F.2d 1081, 1088 (9th Cir. 1989).  In an opinion addressing this issue in the patent context, the Supreme Court has held that any "use [not licensed] is necessarily reserved to the [licensor]." <u>Henry v. A.B. Dick Co.</u>, 224 U.S. 1, 24 (1912).

> 2.  Any Alleged Re-Use License Did Not Grant TCR
> The Right To Retain Chiles And SDT To Copy,
> Re-Use And Modify WHA's Copyrighted Plans

The District Court held that Section IX(B) allowed TCR to retain Chiles and SDT to copy or re-use WHA's copyrighted works for other projects.   In doing so, the District Court implied a conveyance of rights to TCR which was not expressed in the operative Owner/Architect Agreements.  Under the Magistrate Judge's construction, which was adopted by the District Court, TCR was given a license to retain Chiles and SDT to copy and re-use WHA's copyrighted plans.  The

Owner/Architect Agreements on which the District Court based its holding, however, do not provide a re-use license of a scope which would allow TCR to use architects other than WHA to copy, re-use or modify WHA's copyrighted plans.

The District Court's holding was plainly error. Where, as here, rights in copyrighted subject matter are not expressly granted, the license must be construed as preserving those non-granted rights in the copyright owner. Henry, 224 U.S. at 24; Inslaw, Inc. v. U.S., 40 Fed. Cl. 843, 854-55 (Fed. Cl. 1998) (the terms of a copyright conveyance should be construed to exclude that not specifically conveyed). See also Cohen, 845 F.2d at 855; S.O.S., Inc., 886 F.2d at 1088. Hence, the District Court's adoption of the Magistrate Judge's recommendation that the Owner/Architect Agreements gave Defendants a right to retain Chiles and SDT to re-use, copy and modify WHA's copyrighted plans is erroneous. By the express terms of the Owner/Architect Agreement, WHA retained the right to separately license Chiles and SDT. Cohen, 845 F.2d at 853-4 (those rights enumerated under 17 U.S.C. § 106, unless specifically conveyed, remain in the grantor). This right, however, did not pass to Defendants under the express language of the Owner/Architect Agreement.

The prior course of dealings between the parties demonstrates that the Owner/Architect Agreement was not of a scope which permitted copying, re-use or modification by an architect other the WHA.

In August 1996, WHA designed a project called "The Reserve at Barton Creek". In December 1996, TCR approached WHA to execute a <u>separate agreement</u> to allow Chiles to re-use WHA's plans from the Barton Creek project. This agreement is memorialized in a letter to Chiles dated December 2, 1996. (A-Vol. 22, pp. 5295u-v). WHA distinguished the absence of a separate agreement, consistent with the prior course of conduct between the parties, in its letter to TCR protesting Chiles' unauthorized use:

> As you know, Chiles Architects, Inc. has prepared, without our knowledge, Construction Documents for Trammell Crow Residential utilizing plans which are copyrighted property of Womack+Hampton Architects. <u>In the past, on another development in Austin, an agreement was reached between Womack+Hampton Architects, Trammell Crow Residential and Chiles Architects allowing him to utilize our designs on that development for a Use Fee which is common in this industry. Unfortunately, no such agreement was requested nor exists for the use of our Windfern designs.</u>

(A-Vol. 5, pp. 1150-1151) (emphasis added).

This prior course of dealings between the parties is highly probative on the scope of the rights conveyed under the Owner/Architect Agreement. <u>See, S.O.S., Inc.,</u> 886 F.2d at 1088, n. 8 (evidence of the custom and practice between the parties is relevant in clarifying the intent concerning the re-use of architectural works as shown by comparing prior agreements between the parties to establish the scope of the license agreement).

In S.O.S., Inc. v. Payday, Inc., the Ninth Circuit construed 17 U.S.C. § 106 to require that a conveyance to a copyrighted work must be construed according to its literal terms, with all subject matter not expressly conveyed reserved in the copyright holder. S.O.S., Inc., 886 F.2d at 1088. The District Court adopted the findings of the ARRMJ which held that the re-use clause of the Owner/Architect Agreement was broader than that clause presented in S.O.S. (A-Vol. 27, pp. 6459-6462). While the Magistrate Judge recognized the absence of any language of conveyance in the Owner/Architect Agreements that allowed TCR, or those retained by TCR, to re-use and modify WHA's plans, the Magistrate Judge held that the re-use clause of Section IX(B) "necessarily contemplates modifications of the drawings and specifications (by architects other than WHA) to adapt the plans to other sites." (A-Vol. 27, pp. 6459-6462).

This holding is erroneous as a matter of law. It is well established that the district court is not free to engraft terms of conveyance where none were agreed to by the parties nor evidenced in the operative documents, regardless of what is believed to have been "contemplated". Gilliam v. American Broadcasting Cos., 538 F.2d 14, 23 (2nd Cir. 1976).[4]

---

[4] The District Court's holding was based on the purported existence of an express license transferring exclusive rights to TCR to hire Chiles and SDT to re-use and modify WHA's copyright plans. (A-Vol. 27, pp. 6459-6462). 17 U.S.C. § 204(a) requires that the transfer of exclusive rights be in writing. It is undisputed that the Owner/Architect Agreement, on which the Court relied for its decision in granting summary judgment, did not contain any conveyance of rights to TCR to retain any architect other than WHA.

The Second Circuit's decision in <u>Gilliam</u> addresses the requirement that a copyright license must be construed according to its literal and express terms. 538 F.2d at 20-21. In <u>Gilliam</u>, ABC acquired the right to air excerpts from several Monty Python programs. The instruments conveying the license for ABC to use these programs did not expressly allow ABC to edit these programs. Nevertheless, ABC proposed to broadcast edited versions of these excerpts as a derivative work. Monty Python sued to enjoin the proposed airing of this derivative work as beyond the scope of the license. The Second Circuit found that ABC's creation of a derivative work exceeded the scope of the license and thus constituted an infringement of the copyrights in the original work. <u>Gilliam</u>, 538 F.2d at 21.

Like the reasoning applied by the District Court in ignoring the absence of terms of express conveyance, ABC contended that while the underlying copyright license did not <u>expressly</u> allow modification of the copyrighted work, the Court should read the license to take into account what the parties <u>contemplated</u> at the execution of the Agreement. The Second Circuit found these arguments unpersuasive:

> Finally, ABC contends that appellants must have expected that deletions would be made in the recordings to conform them for use on commercial television in the United States. ABC argues that licensing in the United States <u>implicitly</u> grants a license to insert commercials in a program and to remove offensive or obscene material prior to the broadcast. According to the network, appellants should have anticipated that most of the excised material contained scatological references inappropriate for American television and that these scenes

would be replaced with commercials, which presumably are more palatable to the American public.

*          *          *

Several of the deletions made for ABC, such as elimination of the words "hell" and "damn," seem inexplicable given today's standard television fare. If, however, ABC honestly determined that the programs were obscene in substantial part, it could have decided not to broadcast the specials at all, or it could have attempted to reconcile its differences with appellants. The network could not, however, free from a claim of infringement, broadcast in a substantially altered form a program incorporating the script over which the group had retained control.

Gilliam, 538 F.2d at 23 (emphasis added); see also, Inslaw, Inc., 40 Fed. Cl. at 854-55 (a transfer of rights under a copyright will not be implied absent express language of conveyance).

By its express terms, the Owner/Architect Agreement allowed TCR to exercise an option to retain "the Architect" to copy, re-use and modify WHA's copyrighted plans. These same Agreements define "the Architect" as WHA - - not SDT or Chiles. The District Court's conclusion, therefore, necessarily reads terms into the Owner/Architect Agreements not expressly set forth and agreed to between the parties. This construction fails as a matter of law.

Like ABC in Gilliam, TCR had an option: to comply with the terms of the Owner/Architect Agreements and retain WHA to re-use and modify the plans for THE WINDFERN, THE RESERVE AT CHEYENNE, THE RESERVE AT CHARLES PLACE, CAMBRIA PLACE and ARBROOK PARK projects or

24

negotiate with WHA over the scope of the copyright license to allow it to use

Chiles and SDT to make the modifications.[5]  TCR's failure to choose either of

these options, and instead retain Chiles and SDT to modify WHA's plans without

permission or license to do so, gives rise to liability under the Copyright Statute.

See, Quintanilla v. Texas Television, Inc., 139 F.3d 494, 500 (5th Cir. 1998) (a

cause of action for copyright infringement will lie where the licensee exceeds the

scope of the license); Sun Microsystems, Inc. v. Microsoft Corp., 188 F.3d 1115,

1121 (9th Cir. 1999) ("If, however, a license is limited in scope and the licensee

acts outside the scope, the licensor can bring an action for copyright

infringement."); S.O.S. Inc., 886 F.2d at 1087; Gilliam, 538 F.2d at 20-21 (finding

that the licensees' actions in exceeding the scope of the license gave rise to a claim

for copyright infringement); Inslaw, Inc., 40 Fed. Cl. at 854-55.

> ### C.  The Trial Court Erred in Holding
> ### That The Owner/Architect Agreements
> ### Conveyed A Re-Use License To TCR
> ### <u>Absent Payment Of The Re-Use Fee</u>
>
> #### 1.  Payment Of The Re-Use Fee Was A Condition
> #### Precedent To The Grant Of A Re-Use License

The District Court adopted the recommendation of the Magistrate Judge, as

set forth in the ARRMJ, that the Owner/Architect Agreements conveyed to TCR a

---

[5] The prior course of dealings between the parties demonstrates that TCR was aware that it
needed permission to retain architects other than WHA to copy, re-use and modify WHA's plans.
See, discussion at pp. 20-21.

right to "use, copy or cause to have copied" WHA's copyrighted works.[6]  In the

ARRMJ, the Magistrate Judge held that Paragraph IX(B) of the Owner/Architect

Agreements provided that TCR had a "right to use, copy or cause to have copied"

WHA's architectural works on "subsequent phases or other sites." (A-Vol. 22, pp.

5150-5159) (emphasis in original). The Final Judgment was therefore based on the

alleged existence of an express license (as allegedly set forth in the

Owner/Architect Agreement) from WHA to TCR for the re-use of Plaintiff's

architectural works.  The ARRMJ further held that liability for unauthorized use by

TCR was limited to the base architectural fee specified in the Owner/Architect

Agreements, in addition to expenses set forth in these Agreements. (A-Vol. 22, pp.

5150-5159).

Though not specifically addressed in the ARRMJ, the Magistrate Judge's

conclusion that WHA was confined to contractual damages for TCR's

unauthorized use can only follow from its conclusion that the option fee specified

under the Owner/Architect Agreements was not a condition precedent to TCR's

right to re-use these plans.  This conclusion, which was adopted by the District

Court, is erroneous as a matter of law.

---

[6]    "It is therefore Ordered that the Amended Report and Recommendation filed by
Magistrate Judge Stephen Capelle on January 24, 2003 is hereby Accepted and Adopted
herein."  (A-Vol. 27, pp. 6459-6462).

The Owner/Architect Agreements clearly specified four important conveyances and reservations of rights which are controlling for purposes of this appeal of the Final Judgment of the District Court:

(1.)    The Agreements <u>conveyed</u> a license to TCR to use the subject works in connection with the specific project the subject of the particular Agreement. (A-Vol. 5, p. 1001);

(2.)    The Agreements <u>reserved</u> to WHA the right to have WHA copy, re-use, and/or modify the subject works in connection with any other project. (A-Vol. 5, p. 1001).  In this connection, the Agreements specifically set forth that TCR was given <u>no</u> <u>license</u> to re-use WHA's works for other projects. (A-Vol. 5, p. 1001);

(3.)    The Agreements <u>reserved</u> to WHA all rights in the subject works other than that use licensed to TCR in connection with the particular project the subject of each agreement. (A-Vol. 5, p. 1001); and

(4.)    The Agreements <u>conveyed</u> to TCR an option to have WHA copy, re-use and/or modify the subject works, but only if TCR first exercised its option through the payment of a re-use fee. (A-Vol. 5, p. 1001).

The Owner/Architect Agreements set forth that all rights <u>conveyed</u> to TCR for those architectural works developed by WHA for each project were <u>expressly limited to that project</u>.  Therefore, a condition precedent to any rights conveyed to TCR to have WHA copy, re-use or modify WHA's copyrighted works was that TCR <u>first</u> pay the option fee.  The District Court, however, ignored the express reservation of rights in WHA to re-use the copyrighted works as set forth in Section IX(A) of the Owner/Architect Agreements.  Absent a disregard of this reservation of rights to WHA as set forth in the Owner/Architect Agreements, the

District Court could not have found that (1) TCR had a license to copy, re-use and modify the copyrighted works and, therefore (2) the failure by TCR to pay the re-use fee solely gave rise to damages for breach of contract.

The express language of the Owner/Architect Agreement expressly forecloses the District Court's construction of a grant of a re-use license to TCR. Section IX(A) in each Owner/Architect Agreement expressly reserved all rights to WHA in the copyrighted works aside from their use by TCR for the project the subject of the particular Agreement: "for use solely with respect to this project". (A-Vol. 5, p. 1001).  This reservation of rights <u>must</u> be observed in the construction of the operative contracts. <u>S.O.S. Inc.</u>, 886 F.2d at 1087.  (The contract must be construed according to the purposes underlying federal copyright law, and chief among these is the protection of the author's rights.  Any right not expressly granted by contract is retained by the owner.)

The language of Section IX(B) of the Owner/Architect Agreements evidences WHA's intent to retain control over its copyrights and rebuts any implication that WHA intended to grant a re-use license short of TCR's compliance with the express terms of that section.  <u>See, Johnson v. Jones</u>, 149 F.3d 494, 500 (6th Cir. 1998).  That the payment of the re-use fee was a condition precedent to the granting of a re-use license is evidenced by the prior course of dealings between the parties which is highly probative on the existence of a

condition precedent.  See, In re Cavalier Indust., Inc., 2001 Bankr. LEXIS 366,

*12-14 (E.D.Pa. 2001) (parties' course of conduct under other sales agreements

was persuasive evidence of their intentions regarding existence of a condition

precedent in the disputed agreement).  In prior dealings between WHA and TCR,

when TCR attempted to exercise its option to re-use WHA's copyrighted plans,

TCR sought an agreement and paid the re-use fee before any re-use occurred.  In

December 1996, TCR attempted to exercise an option to re-use WHA's plans for a

project called "The Reserve at Barton Creek".  To re-use WHA's plans, TCR

sought an agreement and pre-paid the re-use fee.  This agreement and payment of

the re-use fee was memorialized in a letter to Chiles dated December 2, 1996.  (A-

Vol. 22, pp. 5295u-v).  To this end, TCR admitted that it knew a separate license

and re-use fee were required before re-use of WHA's plans could occur. (A-Vol.

22, p. 5267).  One of TCR's representatives admitted knowing a formal agreement

was needed for the re-use:

> Q: In January of '98 when you forwarded the documents to Chiles
> Architects, did you think you had the right to do what you wanted to do with
> the Womack+Hampton documents?
>
> A: I thought we would have the right.
>
> Q: When you way "would have," that you would in the future get some
> type of an agreement that would allow you to utilize them?
>
> A: I thought that – number one, I thought that Womack+Hampton knew

what we were doing and I thought that a more formal arrangement would be done."

(A-Vol. 33, p. 7722; Vol. 36 p. 8432).

TCR's representative also admitted that a formal agreement was never obtained

allowing modification of WHA's plans:

> Q: The document, the Womack+Hampton documents that were sent to Chiles Architects were modified in order to design the Metric project, correct?
>
> A: Correct.
>
> Q: Did you have a written agreement from Womack+Hampton allowing you to modify the plans?
>
> A: We didn't have anything from Womack+Hampton other than those schematics.

(A-Vol. 17, p. 4228) (emphasis added).

Section IX of the Owner/Architect Agreements is in the nature of a

copyright license. While recognizing Texas law disfavors the interpretation of a

condition precedent, such law must yield where, as here, it is in conflict with the

purposes underlying Federal copyright law. See, Foad Consulting Group, Inc. v.

Musil Govan Azzalino, 270 F.3d 821, 827 (9th Cir. 2001) (only where the

Copyright Act does not address an issue should state law resolve the matter, so

long as the state law does not otherwise conflict with the Copyright Act); Cohen,

845 F.2d at 854 (a copyright license must be construed in accordance with the

purposes underlying federal copyright law).   Chief among these purposes is the

protection of the author's rights. <u>Cohen, supra</u>; <u>Gilliam</u>, 538 F.2d at 23 ("the copyright law should be used to recognize the important role of the artist in our society and the need to encourage production and dissemination of artistic works by providing adequate legal protection for one who submits his work to the public.").

The District Court's construction of the Owner/Architect Agreements fails as contrary to one of the primary axioms of contract construction where one party is essentially given "something for nothing".  <u>See, 3 Nimmer on Copyright</u> § 10.08 at 10-72, 73.  When properly construed, Section IX(B) of the Owner/Architect Agreement created an obligation to pay the re-use fee as a condition precedent to TCR's ability to obtain a license to re-use the copyrighted works.  <u>S.O.S., Inc.</u>, 886 F.2d at 1087; <u>McRoberts Software, Inc. v. Media 100, Inc.</u>, 2001 U.S. Dist. LEXIS 16794 *22-26 (S.D. Ind. 2001), <u>aff'd in part rev'd in part</u>, 329 F.3d 557 (7th Cir. 2003).

In <u>McRoberts Software, Inc.</u>, the district court addressed the precise issue presented in this appeal:  the non-occurrence of a condition precedent to the granting of a copyright license.  In <u>McRoberts Software, Inc.</u>, the license of a right to use and distribute CG Software was conditioned upon the distribution of that software with the intended hardware.  <u>Id.</u> at *25.  The district court found the use of the term "when" as modifying the right to distribute versions of the copyrighted

software was persuasive as indicating that the distribution right was expressly conditioned on the happening of an event, and thus was a right reserved to the copyright holder. Id.

The facts of this case even more strongly compel the finding of a condition precedent.  In McRoberts Software, Inc., the operative instrument included words of conveyance conditioned upon a certain event ("when").   The language of Section IX(B) of the Owner/Architect Agreements, however, is clear that no license to copy, re-use, or modify WHA's architectural works passed to TCR before the payment of the re-use fee.  In this connection, Section IX(B) contains words of reservation ("The Owner agrees not to use, copy or cause to have copied...") conditioned upon the payment of the re-use option fee ("without proper compensation"). (A-Vol. 5, p. 1001).  Plainly, unless and until TCR complied with this condition precedent, and exercised the option for a re-use license, it had no right to re-use the copyrighted works for other projects.   TCR did not comply with this condition precedent since it never paid the re-use fee.  (A- Vol. 27, pp. 6459-6462).  Hence, TCR could not have received a license to re-use WHA's copyrighted works.

That payment of the re-use fee prescribed in Section IX(B) is a condition precedent to a re-use license under the Owner/Architect Agreements is further confirmed by correspondence from WHA to TCR to the effect that TCR had no

license to re-use the subject works.  (A-Vol. 5, pp. 1150-1151).  This notice by

WHA is probative on the fact that payment of the re-use license fee was in fact a

condition precedent to the issue of a re-use license.  <u>Irwin v. American Interactive</u>

<u>Media, Inc</u>., 1994 U.S. Dist. LEXIS 16223, *12-13 (C.D. Cal. 1994) (Plaintiff's

notice to Defendant that "failure to pay [agreed-upon price] would be viewed as

copyright infringement" may be a factor in determining whether payment is a

condition precedent to usage of the material.).

> 2.    Section IX(B) Of The Owner/Architect Agreements
>        Solely Conveyed An Option For A Re-Use License

The District Court failed to recognize that the Owner/Architect Agreements

at Section IX(B) Of The Owner/Architect Agreements merely gave rise to an

<u>option</u> to re-use WHA's copyrighted works for other projects.  By definition, the

rights granted in an option agreement cannot be enjoyed until the option is

exercised.  <u>Merritt-Campbell, Inc. v. RxP Prods., Inc</u>., 164 F.3d 957, 963 (5th Cir.

1999)(the underlying contract which forms a part of an option agreement is not

binding until accepted); <u>Chambless v. Travelers Lloyds of Tex. Ins. Co</u>., 123

F.Supp. 2d 1028, 1033 (N.D. Tex. 2000) ("'the acceptance of an option, to be

effectual, must be unequivocal, absolute, unconditional . . . and according to the

terms or conditions of the option.  Substantial compliance with the terms of the

option is held not sufficient to constitute an acceptance.'" (quoting <u>Leggio v.</u>

<u>Millers Nat'l Ins. Co</u>., 398 S.W.2d 607, 610 (Tex. Civ. App.-Tyler 1965, writ ref'd

n.r.e.)); <u>Primesorb, Inc. v. 95 Corp.</u>, 2000 Tex. App. LEXIS 2259, *13 (Tex. App. - Houston [1st Dist.] 2000, n.w.h.)(until an option is accepted by the optionee, the contract is not complete and is of no force or effect).

Section IX(B) expressly set forth that the option could only be accepted if TCR <u>first</u> tendered the prescribed re-use fee. "The Owner <u>agrees not to use, copy or cause to have copied</u>, the drawings and specification prepared for this project on subsequent phases or other sites <u>without proper compensation</u> to the Architect . . ." (A-Vol. 5 p. 1001). TCR never tendered this fee. (A-Vol. 33, pp. 7720 & 7722-7723).  Since TCR failed to exercise the option conveyed under Section IX(B), it necessarily could not  have received a license to copy, re-use or modify WHA's architectural works.  <u>Merritt-Campbell, Inc.</u>, 164 F.3d at 963; <u>Chambless</u>, 123 F.Supp. 2d at 1033.

> 3.     TCR's Failure To Pay The Re-Use Fee Prescribed
>        Under the Owner/Architect Agreements Gives
>        Rise To An Action For Copyright Infringement

In the ARRMJ, the District Court adopted the recommendation of the Magistrate Judge to the effect that because WHA and TCR entered into a copyright license for the one-time use of Plaintiff's copyrighted plans, TCR's actions in exceeding the scope of this license to re-use WHA's copyrighted plans for other sites gave rise only to an action for breach of contract. (A-Vol. 22, pp. 5150-5159). The precise argument was debunked in <u>McRoberts Software, Inc., supra</u>.  In that

case, the defendant moved for summary judgment on the issue of whether the

copyright claimant could recover copyright damages for defendant's use of

software outside of the scope of the copyright license.  Like TCR, the defendant in

McRoberts Software, Inc. claimed that any damages the plaintiff could recover

were for breach of contract, not for copyright infringement.  The district court

disagreed:

> Thus, if DTI/M100 did in fact exceed the scope of its license to use
> and distribute MSI's software, MSI has a right to sue for copyright
> infringement, and is not limited to a breach of contract claim just
> because it signed the Licensing Agreement.

McRoberts Software, Inc., 2001 U.S. Dist. LEXIS at 16794, *20 (emphasis added).

A leading commentator in the area of copyright law further confirms the

District Court's error that any use of a copyrighted work which is not expressly

licensed gives rise to an action for breach of contract, not copyright infringement:

> If the nature of a licensee's violation consists of a failure to satisfy a
> condition to the license . . ., it follows that the rights dependent upon
> satisfaction of such condition have not been effectively licensed, and
> therefore, any use by the licensee without authority from the licensor
> and may therefore, constitute an infringement of copyright.

3 Nimmer on Copyright § 10.15[A] at 10-121.

4.     Any Re-Use License Did Not Extend To Chiles and SDT

Even assuming, arguendo, that the Owner/Architect Agreement served to

convey a non-exclusive license to TCR, this license was personal to TCR and was

not transferable, absent consent of WHA.  In re CFLC, Inc., 89 F.3d 673, 679 (9th

Cir. 1996) (patent case); <u>SQL Solutions, Inc. v. Oracle Corp.</u>, 1991 U.S. Dist. LEXIS 21097, *12-15 (N.D. Cal. 1991).  In this case, WHA did not consent to Chiles' and SDT's re-use and modification of its copyrighted works.  In fact, WHA notified Chiles that its continued re-use was unauthorized and would result in "damages".  (A-Vol. 5, p. 1158).

Absent a license, Chiles' and SDT's admitted re-use and modification of WHA's copyrighted works gives rise to an independent cause of action for infringement of WHA's copyrights.  <u>Feist Publications v. Rural Tel. Serv. Co.</u>, 499 U.S. 340, 361 (1991).

## **CONCLUSION**

For all of the foregoing reasons, WHA respectfully requests that the Court: (1) hold that the District Court erred in granting Defendants' Motion for Summary regarding damages and denying WHA's Motion for Summary Judgment regarding damages, and (2) remand the case to the District Court for further proceedings consistent with WHA's copyright action.

Respectfully submitted,

_____

Dated: _____

Gregory M. Luck
Thomas W. Sankey
SANKEY & LUCK, L.L.P.
6200 Chase Tower, 600 Travis
Houston, Texas 77002
(713) 224-1007 Telephone
(713) 223-7737 Facsimile

Timothy N. Trop
Trop, Pruner & Hu
8554 Katy Freeway, Suite 100
Houston, Texas 77024
(713) 468-8880 Telephone
(713) 468-8883 Facsimile

Terry L. Scarborough
HANCE, SCARBOROUGH, WRIGHT,
WOODWARD & WEISBART, L.L.P.
111 Congress Avenue, Suite 500
Austin, Texas 78701
(512) 479-8888 - Telephone
(512) 482-6891 - Facsimile

ATTORNEYS FOR PLAINTIFF
WOMACK+HAMPTON ARCHITECTS, L.L.C.

## <u>CERTIFICATE OF SERVICE AND FILING</u>

I hereby certify that on this _____ day of September, 2003, two (2) bound copies of the Brief of Appellant and a diskette in PDF format, were served via Federal Express to each of the following:

Rick Harrison
Fritz, Byrne, Head & Harrison, L.L.P.
98 San Jacinto, Suite 2000
Austin, Texas 78701

Richard D. Yeomans
Orlesia Hawkins
Graves, Dougherty, Hearon & Moody
515 Congress Ave., Suite 2300
Austin, Texas 78701

John Cahill
Hays, McConn, Rice & Pickering
1200 Smith, Suite 400
Houston, Texas 77002

*Counsel for Appellees*

I also certify that on this _____ day of September, 2003, the original and seven (7) bound, paper copies and one (1) diskette copy in PDF format of Brief of Appellant were filed at the Office of the Clerk, United States Court of Appeals for the Fifth Circuit.

_____
Terry L. Scarborough
HANCE, SCARBOROUGH, WRIGHT,
WOODWARD & WEISBART, L.L.P.
Attorneys for Womack+Hampton Architects, L.L.C.

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i).

1.     Exclusive of the exempted portions of the brief, as provided in Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), this brief includes 7,553 words.

2.     This brief has been prepared in proportionally spaced typeface Microsoft Word 2000 in 14 point Times New Roman font.  As permitted by Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned has relied upon the word count of this word-processing system in preparing this certificate.


Dated:  September _____, 2003


_____
Terry L. Scarborough
HANCE, SCARBOROUGH, WRIGHT,
WOODWARD & WEISBART, L.L.P.
Attorneys for Womack+Hampton Architects, L.L.C.