# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

## CASE NO. 03-50549

WOMACK+HAMPTON ARCHITECTS, LLC

Plaintiff - Appellant

v.

METRIC HOLDINGS LIMITED PARTNERSHIP; CHILES ARCHITECTS, INC; TRAMMEL CROW RESIDENTIAL COMPANY; CHRIS WHEELER; TCR OPERATING COMPANY, INC; TCR METRIC, LP; SOUTH CENTRAL RS, INC; TCR SOUTH CENTRAL, INC; TCR SOUTH CENTRAL 1995, INC; TCR SOUTH CENTRAL DIVISION LP; TCR METRIC CONSTRUCTION LIMITED PARTNERSHIP; GARY CHILES; ROBERT BUZBEE; LEWIS BUNCH; KENNETH J VALACH; PERRY WILSON; J RONALD TERWILLIGER

Defendants - Appellees

_____

## BRIEF OF APPELLEES/CROSS-APPELLANTS
## TRAMMELL CROW ENTITIES AND INDIVIDUALS

_____

(caption continued on following pages)

WOMACK+HAMPTON ARCHITECTS, LLC

Plaintiff - Appellant

v.

TRAMMEL CROW RESIDENTIAL; TCR LOS RIOS LIMITED PARTNERSHIP COMPANY; TCR SOUTH CENTRAL 1995 INC; SDT ARCHITECTS INC; LEWIS BUNCH; KENNETH J VALACH; THOMAS STOVALL; JOHN ZELEDON; TIM HOGAN; JERRY DANIELS; PERRY K WILSON;

Defendants - Appellees

CONS. W/ Case No. 03-50859

WOMACK+HAMPTON ARCHITECTS LLC

Plaintiff - Appellee

v.

METRIC HOLDINGS LIMITED PARTNERSHIP; CHILES ARCHITECTS; TRAMMEL CROW RESIDENTIAL CO; CHRIS WHEELER; TCR OPERATING COMPANY INC; TCR METRIC LP; SOUTH CENTRAL RS INC; TCR SOUTH CENTRAL INC; TCR SOUTH CENTRAL 1995 INC; TCR SOUTH CENTRAL DIVISION LP; TCR METRIC CONSTRUCTION LIMITED PARTNERSHIP; GARY CHILES; ROBERT BUZBEE; LEWIS BUNCH; KENNETH J VALACH; PERRY WILSON; J RONALD TERWILLIGER

Defendants - Appellants

WOMACK+HAMPTON ARCHITECTS, LLC

Plaintiff - Appellee

v.

TRAMMELL CROW RESIDENTIAL; ET AL
            Defendants

TRAMMELL CROW RESIDENTIAL; TCR LOS RIOS LIMITED PARTNERSHIP
COMPANY; TCR SOUTH CENTRAL 1995 INC; LEWIS BUNCH; KENNETH J
VALACH; JOHN ZELEDON; TIM HOGAN; PERRY K WILSON
            Defendants - Appellants

_____

ATTORNEYS FOR METRIC HOLDINGS LIMITED PARTNERSHIP;
TRAMMELL CROW RESIDENTIAL COMPANY; CHRIS WHEELER; TCR
OPERATING COMPANY, INC; TCR METRIC, LP; SOUTH CENTRAL RS, INC.;
TCR SOUTH CENTRAL, INC; TCR SOUTH CENTRAL 1995, INC.; TCR SOUTH
CENTRAL DIVISION LP; TCR METRIC CONSTRUCTION LIMITED
PARTNERSHIP; ROBERT BUZBEE; LEWIS BUNCH; KENNETH J VALACH;
PERRY WILSON; J RONALD TERWILLIGER; TRAMMELL CROW
RESIDENTIAL; TCR LOS RIOS LIMITED PARTNERSHIP COMPANY; JOHN
ZELEDON, AND TIM HOGAN DEFENDANTS-APPELLEES/CROSS-
APPELLANTS.[1]

GRAVES DOUGHERTY HEARON & MOODY, PC
Richard D. Yeomans
Texas State Bar No. 24030014
W. Reid Wittliff
Texas State Bar No. 00791951
Orlesia A. Hawkins
Texas State Bar No. 24004628
515 Congress Avenue, Suite 2300
Austin, Texas  78701
(512) 480-5600 - Telephone
(512) 478-1976 - Facsimile

_____

[1]These parties, which were sometimes referred to as "Crow Defendants" or "TCR
Defendants" in the District Court, will be referred to collectively as "Trammell Crow" in this Brief.

## **CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

Parties:

Trammell Crow Defendants – Appellees/Cross-Appellants:

Entities:

Metric Holdings Limited Partnership

Trammell Crow Residential Company

TCR Operating Company, Inc.

TCR Metric, L.P.

South Central RS, Inc.

TCR South Central, Inc.

TCR South Central 1995, Inc.

TCR South Central Division L.P.

TCR Metric Construction Limited Partnership

TCR Los Rios Limited Partnership

Pursuant to Fed. R. App. P. 26.1(a) and Fifth Circuit Rules 26.1.1 and 28.2.1, no parent company or publicly held corporation owns 10% or more of the stock of any of the above entities.

Individuals:

Robert Buzbee

Lewis Bunch

Kenneth J. Valach

Perry Wilson

Chris Wheeler

J. Ronald Terwilliger

John Zeledon

Tim Hogan

Chiles Architects Defendants-Appellees/Cross-Appellants:

Chiles Architects, Inc.

Gary Chiles

SDT Architects Defendants-Appellees:

SDT Architects, Inc.

Thomas H. Stovall

Jerry Daniels

Plaintiff-Appellant/Cross-Appellee:

Womack+Hampton, L.L.C.

Attorneys:

Counsel for Trammell Crow Defendants-Appellees/Cross-Appellants:

_____Richard D. Yeomans
W. Reid Wittliff
Orlesia A. Hawkins
GRAVES DOUGHERTY HEARON
   & MOODY, PC
515 Congress Avenue, Suite 2300
Austin, Texas  78701
(512) 480-5600 - Telephone
(512) 478-1976 - Facsimile

Counsel for Chiles Architects, Defendants-Appellees/Cross-Appellants:

_____Rick Harrison
Shelli Wakefield
FRITZ BYRNE HEAD & HARRISON, L.L.P.
98 San Jacinto, Suite 2000
Austin, Texas  78701
(512) 476-2020 - Telephone
(512) 477-5267 - Facsimile

Counsel for SDT Architects, Defendants-Appellees:
_____John P. Cahill
HAYS MCCONN RICE & PICKERING
1200 Smith Street, Suite 4200
Houston, Texas  77002

(713) 654-1111 - Telephone
(713) 650-0027 - Facsimile

Counsel for Womack+Hampton Architects, LLC, Plaintiff-Appellant/Cross-Appellee:

Gregory M. Luck
Thomas W. Sankey
SANKEY & LUCK, L.L.P.
6200 Chase Tower, 600 Travis
Houston, Texas 77002
(713) 224-1007 - Telephone
(713) 223-7737 - Facsimile

Timothy N. Trop
TROP, PRUNER & HU, P.C.
8554 Katy Freeway, Suite 100
Houston, Texas 77024
(713) 468-8880 - Telephone
(713) 468-8883 - Facsimile

Terry L. Scarborough
HANCE, SCARBOROUGH, WRIGHT,
WOODWARD & WEISBART, L.L.P.
111 Congress Avenue, Suite 500
Austin, Texas 78701
(512) 479-8888 - Telephone
(512) 482-6891 - Facsimile

Other Interested Parties:

TCR SCA Construction, Inc.

ITCR Metric Limited Partnership

Crow Residential Realty Investors Limited Partnership

iv

TCF Residential Partnership, Limited

CFP Residential, Limited Partnership

ITCR Los Rios Limited Partnership

TCR/DAD Los Rios Limited Partnership

J. Ronald Terwilliger Grantor Trust

Thomas J. Patterson

Doug Chestnut

Michael Collins

Randy J. Pace

Harlan Crow

Charles Womack

Michael Hampton

 

_____
Richard D. Yeomans
Attorney of Record for Appellees/Cross-Appellants
Trammell Crow Entities and Individuals

## STATEMENT REGARDING ORAL ARGUMENT

Trammell Crow states that the facts and legal argument are sufficiently presented in the briefs and record and believes that the decisional process would not be significantly aided by oral argument. The merits of this case can be decided by application of fundamental principles of contract construction, as the District Court determined when it entered summary judgment in favor of Trammell Crow and against Womack+Hampton Architects, LLC ("Womack"). Similarly, the errors raised by Trammell Crow with respect to the District Court's denial of its request for attorneys' fees and costs incurred in successfully defending against Womack's copyright claims can be decided by reference to applicable legal standards established by the United States Supreme Court and the Fifth Circuit Court of  Appeals. Trammell Crow therefore believes that oral argument is not required.

## TABLE OF CONTENTS

Page(s)

**CERTIFICATE OF INTERESTED PERSONS** . . . . . . . . . . . . . . . . . . . . . . . i

**STATEMENT REGARDING ORAL ARGUMENT** . . . . . . . . . . . . . . . . . vi

**TABLE OF CONTENTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

**TABLE OF AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . x

**STATEMENT OF JURISDICTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**STATEMENT OF ISSUES PRESENTED FOR REVIEW** . . . . . . . . . . . . . . 3

**STATEMENT OF THE CASE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**STATEMENT OF RELEVANT FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      **A.**    **Facts Pertinent to Womack's First Action** . . . . . . . . . . . . . . . . . 11

      **B.**    **Facts Pertinent to Womack's Second Action** . . . . . . . . . . . . . . . 13

**SUMMARY OF ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**I.**    **Standard of review** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**II.**   **There are no genuine issues of material fact** . . . . . . . . . . . . . . . . . . 16

**III.**  **Trammell Crow's re-use of Womack's architectural drawings was clearly within the scope of the Owner Architect Agreements** . . . . . . 18

A.    **Texas law governs the construction of the Owner Architect Agreements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

B.    **The Owner Architect Agreements expressly allow Trammell Crow to re-use Womack's drawings and specifications on other sites** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

C.    **The Owner Architect Agreements allow Trammell Crow to re-use Womack's architectural drawings and specifications with other architects** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

D.    **The Owner Architect Agreements allow Trammell Crow to modify Womack's architectural drawings and specifications** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

E.    **The Owner Architect Agreements do not contain a condition precedent to Trammell Crow's re-use of the drawings and specifications** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

F.    **The Owner Architect Agreements are not option contracts** . . . 35

G.    **Should the Court look to the parties' course of dealing concerning the Owner Architect Agreements, it supports the District Court's ruling** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

H.    **In the alternative, Trammell Crow had an implied, nonexclusive license to make derivative works from Womack's drawings and specifications** . . . . . . . . . . . . . . . . . . . 41

IV.    **The District Court erred in failing to award prevailing Defendant Trammell Crow its attorneys' fees and costs under the Copyright Act** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

    A.    **Standard of review** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

**B.**    **The District Court erred legally when it found that Trammell Crow was not a "prevailing party" within the meaning of 17 U.S.C. § 505 of the Copyright Act.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

**C.**    **The District Court erred legally when it concluded that an award to Trammell Crow would not further the purposes of the Copyright Act by increasing public exposure to the architects' drawings** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

**D.**    **The District Court erred legally when it held that "frivolousness" and "objective unreasonableness" are prerequisites to an award of costs and fees under Section 505 of the Copyright Act** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

**E.**    **The District Court abused its discretion when it refused to award Trammell Crow any of its costs and attorneys' fees incurred in successfully defending against Womack's copyright claims** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56
      **1.**    **Frivolousness** . . . . . . . . . . . . . . . . . . . . . . . . 57
      **2.**    **Objective unreasonableness** . . . . . . . . . . . . . . . . . . . . 59
      **3.**    **Compensation and deterrence** . . . . . . . . . . . . . . . . 61

**F.**    **Attorneys' fees and costs should be awarded to Trammell Crow** 62

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

**CERTIFICATE OF SERVICE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

**CERTIFICATE OF COMPLIANCE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Adsani v. Miller*,
139 F.3d 67 (2d Cir.), *cert. denied*, 525 U.S. 875 (1998) . . . . . . . . . . . . . 62

*Alameda Films S.A. de C.V. v. Authors Rights Restoration Corp.*,
331 F.3d 472 (5th Cir. 2003, pet. filed 72 USLW 3248 (Sept. 23, 2003))
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*American Well Works Co. v. Layne & Bowler Co.*,
241 U.S. 257 (1916) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Calderon-Ontiveros v. INS,*
809 F.2d 1050 (5th Cir.1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Cal-Tex Lumber Co. v. Owens Handle Co.*,
989 S.W.2d 802 (Tex. App. – Tyler 1999, no pet.) . . . . . . . . . . . . . . . . . 33

*Carson v. Dynergy, Inc.*,
344 F.3d 446 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*City of Pinehurst v. Spooner Addition Water Co.*,
432 S.W.2d 515 (Tex. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37, 38

*CJC Holdings, Inc. v. Wright & Lato, Inc.*,
979 F.2d 60 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*Criswell v. European Crossroads Shopping Center, Ltd.*,
792 S.W.2d 945 (Tex. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Dewitt County Elec. Coop., Inc. v. Parks*,
1 S.W.3d 96 (Tex. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

x

*Edwards v. Red Farm Studio Co.*,
109 F.3d 80 (1st Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

*Effect Assocs., Inc. v. Cohen*,
908 F.2d 555 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Elvis Presley Enters. v. Capece*,
141 F.3d 188 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Engle v. Teleprompter Corp.*,
732 F.2d 1238 (5th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*Fantastic Fakes, Inc. v. Pickwick Int'l, Inc.*,
661 F.2d 479 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 21

*Foad Consulting Group, Inc. v. Musil Govan Azzalino*,
270 F.3d 821 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27, 44

*Fogerty v. Fantasy, Inc.*,
510 U.S. 517 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 47, 51, 52, 53
*passim*

*Forest Oil Corp. v. Strata Energy, Inc.*,
929 F.2d 1039 (5th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Gilliam v. American Broadcasting Cos., Inc.*,
538 F.2d 14 (2nd Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30

*Graham v. James*,
144 F.3d 229 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 35

*Hamil America, Inc. v. GFI*,
193 F.3d 92 (2d Cir. 1999), *cert. denied*, 528 U.S. 1160 (2000) . . . . . . . . 59

*Harris Custom Builders, Inc. v. Hoffmeyer*,
    140 F.3d 728 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

*Heritage Resources, Inc. v. NationsBank*,
    939 S.W.2d 118 (Tex. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Hogan Sys., Inc. v. Cybersource Int'l, Inc.*,
    158 F.3d 319 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . 28, 29, 46, 48
                                                                               *passim*

*Hohenberg Bros. Co. v. George E. Gibbons & Co.*,
    537 S.W.2d 1 (Tex. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*I.A.E., Inc. v. Shaver*,
    74 F.3d 768 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 42, 43, 44

*Kennedy v. National Juvenile Detention Ass'n*,
    187 F.3d 690 (7th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Lieb v. Topstone Indus., Inc.*,
    788 F.2d 151 (3rd Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 52, 54, 55

*Louisville & Nashville R.R. Co. v. Mottley*,
    211 U.S. 149 (1908) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Lulirama Ltd., Inc. v. Axcess Broadcast Svs., Inc.*,
    128 F.3d 872 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Matthews v. Freedman*,
    157 F.3d 25 (1st Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

*MCA TV, Ltd., v. Public Interest Corp.*,
    171 F.3d 1265 (11th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*McGaughey v.Twentieth Century Fox Film Corp.*,
    12 F.3d 62 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46, 48

*McRoberts Software, Inc. v. Media 100, Inc.,*
  329 F.3d 557 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

*Merritt-Campbell, Inc. v. RxP Products, Inc.,*
  164 F.3d 957 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 37

*Micromanipulator Co. v. Bough,*
  779 F.2d 255 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*Preston Ridge Financial Servs. Corp. v. Tyler,*
  796 S.W.2d 772 (Tex. App. – Dallas 1990, writ denied) . . . . . . . . . . . . . 22

*RT Computer Graphics, Inc. v. United States,*
  44 Fed. Cl. 747 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*S.O.S., Inc. v. Payday, Inc.,*
  886 F.2d 1081 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 31, 32

*Scandinavian Satellite Sys. v. Prime TV Ltd.,*
  291 F.3d 839 (D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49, 50

*Sheldon v. Metro-Goldwyn Pictures Corp.,*
  309 U.S. 390 (1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

*Sun Microsystems, Inc. v. Microsoft Corp.,*
  188 F.3d 1115 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*T.B. Harms Co. v. Eliscu,*
  339 F.2d 823 (2d Cir. 1964), *cert. denied*, 381 U.S. 915 (1965) . . . . . . . . 49

*Texas Dep't of Housing and Community Affairs v. Verex Assurance, Inc.,*
  68 F.3d 922 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 34

*Universal Health Services, Inc. v. Renaissance Women's Group,*
   47 Tex. Sup. Ct. J. 20, 2003 WL 22232492 (Tex. September 30, 2003)
   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## STATUTES

17 U.S.C. § 504(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

17 U.S.C. §504(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

17 U.S.C. § 505 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8, 45, 47
                                                                          *passim*

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 16, 18

28 U.S.C. § 1338(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## RULES OF APPELLATE PROCEDURE

Fed. R. App. P. 28(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## FIFTH CIRCUIT COURT RULES

28.2.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## OTHER AUTHORITIES

MELVILLE B. NIMMER & DAVID NIMMER,
   3 NIMMER ON COPYRIGHT
   § 1.01[B][3][a] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
   § 10.03[A][8] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
   § 10.08 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
   § 14.03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

PAUL GOLDSTEIN, 2 COPYRIGHT § 12.1.2.1.d . . . . . . . . . . . . . . . . . . . . . . . . . 59

RESTATEMENT (SECOND) OF CONTRACTS § 224 (1981) . . . . . . . . . . . . . . . . . . . . 34

## STATEMENT OF JURISDICTION

Womack filed these consolidated actions in federal court under the Copyright Act of 1976 ("Copyright Act"),[2] thereby invoking the District Court's jurisdiction under 28 U.S.C. § 1338(a). On April 30, 2003, the District Court entered a Final Judgment on its April 18, 2003 summary judgment orders denying Womack relief under the Copyright Act. Womack timely filed its Notice of Appeal on May 16, 2003, and this Court therefore has jurisdiction to hear Womack's appeal under 28 U.S.C. § 1291.

On July 9, 2003, the District Court entered its Order denying Crow Defendants' Application for an Award of Costs and Attorneys' Fees under the Copyright Act. Trammell Crow timely filed its Notice of Appeal on July 23, 2003, and this Court therefore has jurisdiction to hear Trammell Crow's appeal under 28 U.S.C. § 1291.

---

[2] 17 U.S.C. § 101 *et seq.*

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    Whether the District Court erred when it determined that damages recoverable by Womack in its copyright infringement actions against Trammell Crow were limited by the terms of the parties' Owner Architect Agreements.

2.    Whether the District Court erred when it determined that Womack granted Trammell Crow a non-exclusive license to re-use its architectural drawings and specifications in the Owner Architect Agreements Womack drafted.

3.    Whether the District Court erred when it determined that Womack's grant of a nonexclusive license to Trammell Crow to re-use Womack's architectural drawings and specifications constituted a waiver by Womack of the right to sue Trammell Crow for copyright infringement.

4.    Whether the District Court erred when it suggested that Trammell Crow was not a prevailing party within the meaning of 17 U.S.C. § 505 of the Copyright Act.

5.    Whether the District Court erred when it held that "frivolousness" and "objective unreasonableness" were prerequisites to an award of costs and attorneys' fees under 17 U.S.C. § 505 of the Copyright Act.

6.     Whether the District Court abused its discretion when it refused to award Trammell Crow any of its costs and attorneys' fees incurred in successfully defending against Womack's copyright claims.

## STATEMENT OF THE CASE

Womack filed its first copyright infringement action against certain Trammell Crow entities and against Chiles Architects, Inc. in the Western District of Texas on September 6, 2001. 1R: 1-11.[3] Womack amended its complaint several times to add twelve other Trammell Crow entities and individuals as well as architect Gary Chiles as defendants in the lawsuit. 1R: 20-27 (first amended complaint); 2R: 402-427 (second amended complaint); 16R: 3944-3980 (third amended complaint). Womack filed its second copyright infringement action against Trammell Crow and SDT Architects, Inc., Thomas Stovall and Jerry Daniels (collectively "SDT") in the Southern District of Texas on August 1, 2002. 40R: 264-275 (original complaint); 40R: 222-234 (first amended complaint). Because the lawsuits involved common questions of law and fact, Womack's second copyright action was transferred to the Western District of Texas and was consolidated with Womack's first copyright action. 40R: 1-3 (order to transfer venue); 40R: 307 (order to consolidate).

---

[3]"1R: 1-11" refers to the volume and page numbers of the record on appeal, here volume 1, pages 1 through 11. This format is used throughout this brief.

In both actions, Womack alleged that Trammell Crow and architects retained by Trammell Crow (Chiles[4] in the first action and SDT in the second action) infringed Womack's copyrights when they allegedly re-used certain of Womack's architectural drawings and specifications without Womack's permission. Womack filed only copyright claims and sought only copyright damages in both actions. Womack made no claim for contract damages.

In response to Womack's allegations, Trammell Crow, Chiles and SDT raised defenses challenging the validity of Womack's purported copyrights and also contending that Womack had waived its right to sue for copyright infringement by granting Trammell Crow the right to re-use its architectural drawings and specifications in Owner Architect Agreements Womack itself had drafted. 17R: 4140-4151 (Trammell Crow's Answer in first action); 40R: 41-49 (Trammell Crow's Answer in second action). Trammell Crow also asserted counterclaims against Womack. 17R: 4140-4151.

Early in the first action, before Womack filed its second action in the Southern District of Texas, Trammell Crow moved for entry of partial summary judgment that damages recoverable by Womack, if any, were limited by the terms of the parties'

---

[4]Chiles Architects, Inc. and Gary Chiles are referred to collectively as "Chiles."

Owner Architect Agreements. 4R: 804-945. Trammell Crow's motion was referred to Magistrate Judge Stephen H. Capelle for report and recommendation. On October 10, 2002, Magistrate Judge Capelle recommended that Trammell Crow's motion for partial summary judgment be granted because "the amount of damages WHA [Womack] may seek to recover was limited by contract, specifically the re-use fee prescribed under the Owner Architect Agreement." 17R: 4120-4128; Womack RE: Tab 9.[5]

Before the District Court acted on Magistrate Judge Capelle's report and recommendation in the first action, Womack's second action was transferred and consolidated with its first action. 40R: 1-3; 40R: 307. The Magistrate Judge requested additional briefing from the parties "in light of the additional parties and facts in this consolidated case." 20R: 4880-4882. Following additional briefing, Magistrate Judge Capelle issued an Amended Report and Recommendation which amended his previous recommendation only in that it extended his recommendation concerning limitation of damages recoverable by Womack in the first action to also include the second action. 22R: 5150-5159; Womack RE: Tab 10. Chief Judge

---

[5]"Womack RE" refers to the record excerpts filed by Womack. This citation format is used throughout this brief for both Womack's record excerpts and Trammell Crow's record excerpts.

James R. Nowlin approved and accepted the Amended Report and Recommendation and granted Trammell Crow's motion for partial summary judgment on February 19, 2003.  27R: 6459-6462; Womack RE: Tab 6.

Based on this ruling, Trammell Crow moved for summary judgment on all of Womack's copyright infringement claims. 28R: 6585-6591.  This motion was also referred to Magistrate Judge Capelle who recommended that it be granted because "the grant of a nonexclusive license to use copyrighted material acts as a waiver by the copyright owner to sue the licensee for copyright infringement."  33R: 7637-7643; Womack RE: Tab 12.  Chief Judge Nowlin accepted and approved this recommendation and granted Trammell Crow's motion for summary judgment on April 18, 2003. 33R: 7754-7757; Womack RE: Tab 7. Trammell Crow and Womack subsequently entered into a tolling agreement, and Trammell Crow dismissed its counterclaims against Womack without prejudice on April 30, 2003. 33R: 7762. The District Court entered a final judgment that same day. 33R: 7765; Womack RE: Tab 5.  Womack filed a timely notice of appeal. 35R: 8274; Womack RE: Tab 4.

After final judgment was entered, Trammell Crow filed its Application for an Award of Costs and Attorneys' Fees as a prevailing party under Section 505 of the Copyright Act, along with a brief containing supporting documentation and

8

affidavits. 35R: 7959-7974; 35R: 7989-8272. Trammell Crow's Application was referred to Magistrate Judge Capelle for report and recommendation. Magistrate Judge Capelle recommended that Trammell Crow's application be denied. 39R: 9149-9155, Trammell Crow RE: Tab 6. Trammell Crow timely objected to the report and recommendation, but Chief Judge Nowlin accepted the Magistrate Judge's report and recommendation on July 9, 2003. 39R: 9164-9178; 39R: 9179-9180, Trammell Crow RE: Tab 5. Trammell Crow timely filed a notice of appeal from the July 9, 2003 Order. 39R: 9181-9183, Trammell Crow RE: Tab 4. Trammell Crow's appeal of the denial of its request for costs and fees was subsequently consolidated with Womack's appeal of the summary judgment rulings.

Trammell Crow contends that the District Court properly granted its motions for summary judgment, and that the District Court's summary judgment orders in its favor should be affirmed. Trammell Crow also contends that the District Court erred when it applied an incorrect legal standard to deny Trammell Crow's Application for an Award of Costs and Attorneys's Fees under the Copyright Act, and abused its discretion in denying Trammell Crow's application in its entirety.

## STATEMENT OF RELEVANT FACTS

Trammell Crow is involved generally in residential real estate development, and has developed and constructed apartment projects in Texas and in other states. Womack is an architectural firm located in Dallas, Texas which has prepared architectural drawings for some of Trammell Crow's apartment complexes. 4R: 824-831, Trammell Crow RE: Tab 13. Womack drafted, and Trammell Crow signed, a separate Owner Architect Agreement in connection with each of the Trammell Crow apartment projects for which Womack provided architectural services, and which are at issue in this case. *Id.*; 4R: 817-822, 4R: 4916-5004 (excerpts from all five Owner Architect Agreements are provided in Trammell Crow Record Excerpts, Tabs 7-11). These Owner Architect Agreements are identical in all respects germane to this appeal. Womack Brief at 7.

The Owner Architect Agreements expressly allow Trammell Crow to re-use Womack's architectural drawings and specifications prepared pursuant to the agreements. Section IX(B) of each Owner Architect Agreement provides:

IX.  OWNERSHIP AND RE-USE OF DOCUMENTS

. . . .

10

B.    The Owner agrees not to use, copy or cause to have copied, the drawings and specifications prepared for this project on subsequent phases or other sites without proper compensation to the Architect, which shall be based upon a mutually agreed upon of [sic] $150.00 per unit (base architectural fee), plus engineering services, plus contingent additional hourly charges and expenses for plan modifications necessary to adapt these plans and specifications to other sites.

21R: 4916-4934; 21R: 4936-4953; 21R: 4955-4968; 21R: 4970-4985; 21R: 4987-

5004; Trammell Crow RE: Tabs 7-11.[6]

A.    **Facts Pertinent to Womack's First Action**

As stated above, Womack filed two separate copyright infringement actions.

Womack's first copyright action was filed in the Western District of Texas and made

allegations against Trammell Crow and Chiles.

In 1998, Trammell Crow hired Chiles to prepare architectural plans for an

apartment complex Trammell Crow planned to build in Austin, Texas.   4R: 826,

Trammell Crow RE: Tab 13.  In connection with this project, a Trammell Crow entity

forwarded several unit and building layout schematics earlier prepared by Womack

under its Owner Architect Agreement with Trammell Crow for the Windfern project

in Houston to Austin architect Gary Chiles, and asked that Chiles use these

---

[6]One Owner Architect Agreement provided for a $250 per unit base architectural fee in Section IX(B) but was otherwise identical.  21R: 4980, Trammell Crow RE: Tab 10.

schematics as a basis for the Austin project.  4R:826-827, Trammell Crow RE: Tab 13.

Womack learned that its schematics were being used in connection with the Austin project before construction of the project began.  On September 30, 1998, before Trammell Crow broke ground on the Austin project, Womack wrote to Trammell Crow and asked for a partial payment of the re-use fee described in Section IX(B) of the Owner Architect Agreement.  Womack's letter stated:

> Our original agreement with Trammell Crow Residential, Houston, for Windfern calls for a $150.00 per unit Re-Use fee for future use of our plans.  Because of our long relationship with your company, and the fact that the plans were redrafted by Mr. Chiles, we are willing to accept one half of that amount, i.e. $75.00 per unit for a total Use Fee of $27,450.00.  Any future reuse of this product will be priced per the original written agreement.

4R:917-918, Trammell Crow RE: Tab 14.

On October 8, 1998, Trammell Crow asked that Womack waive the fee in the agreement.  4R: 920, Trammell Crow RE: Tab 15.  Womack never responded to Trammell Crow's request, and Trammell Crow understood that Womack had agreed to waive the fee.  4R: 817-822, Trammell Crow RE: Tab 12; 4R: 824-831, Trammell Crow RE: Tab 13.  Trammell Crow completed the Austin apartment project in

November, 1999. 4R: 829, Trammell Crow RE: Tab 13. In September 2001, almost

three years after Womack last communicated with Trammell Crow concerning the re-

use fee, Womack sued Trammell Crow for copyright infringement.[7]

## B.     Facts Pertinent to Womack's Second Action

Womack filed a very similar copyright infringement action against Trammell

Crow and SDT in the Southern District of Texas in August 2002. 40R: 264-275.

Much as it did in its first action, Womack claimed in its second action that Trammell

Crow infringed its copyrights by providing architectural drawings Womack had

prepared for Trammell Crow under an Owner Architect Agreement to SDT for use

in connection with SDT's design of an apartment complex Trammell Crow planned

to build in Plano, Texas. 40R: 225-226.

Womack's second copyright action was transferred to the Western District of

Texas and was consolidated with Womack's first action shortly after it was filed.

40R: 1-3; 40R: 307. Following consolidation, the District Court ruled that the Owner

Architect Agreements expressly permitted Trammell Crow to re-use Womack's

---

[7]Womack had not sought copyright registration of its drawings or specifications when it asked Trammell Crow to pay it the partial re-use fee. In fact, Womack did not apply for copyright registrations for the architectural drawings at issue until August and October of 2001 and June of 2002, after the Austin apartment project had been completed and sold by Trammell Crow. 1R: 22; 2R: 407; 40R: 267.

drawings and specifications on other sites. 27R: 6459-6462. The parties therefore conducted almost no discovery in the second action before summary judgment was entered in favor of Trammell Crow on Womack's claims.

## SUMMARY OF ARGUMENT

The District Court properly entered summary judgment in favor of Trammell Crow and against Womack on Womack's copyright infringement claims. The unambiguous language of the Owner Architect Agreements, drafted by Womack, expressly allowed Trammell Crow to "use, copy or cause to have copied" Womack's drawings and specifications on other sites for a fee. By this language Womack granted Trammell Crow a nonexclusive license to use Womack's architectural drawings and specifications on other sites. Although Trammell Crow's failure to pay the re-use fee might have given rise, at most, to a breach of contract claim, it did not support a copyright infringement claim. Because Womack waived its right to sue for copyright infringement by granting Trammell Crow a nonexclusive license to re-use its drawings and specifications, Womack's copyright infringement claims failed as a matter of law.

The District Court erred when it declined to award Trammell Crow a single penny of its costs and attorneys' fees incurred in successfully defending against

Womack's copyright infringement claims. The *complete* denial of any of Trammell Crow's costs and fees incurred is a material and erroneous deviation from the established rule of this Circuit concerning award of costs and fees to a prevailing party in copyright litigation. The District Court erred when it suggested that Trammell Crow was not a prevailing party within the meaning of 17 U.S.C. § 505 of the Copyright Act, erred when it held that "frivolousness" and "unreasonableness" were prerequisites to an award of costs and attorneys' fees under 17 U.S.C. § 505 of the Copyright Act, and erred when it determined that prevailing defendants should be treated differently from prevailing plaintiffs under the Copyright Act. Additionally, the District Court's denial of Trammell Crow's request for costs and fees incurred was an abuse of discretion.

## **ARGUMENT**

### I.    **Standard of review**

Pursuant to Fed. R. App. P. 28(b)(1) and Fifth Circuit Rule 28.2.6, Trammell Crow agrees with the *de novo* standard of review recited in Womack's Brief as it pertains to the District Court's summary judgment rulings.

## II.    There are no genuine issues of material fact.

In its summary judgment rulings, the District Court found that there were no genuine issues of material fact.  27R: 6459-6462, Womack RE: Tab 6; 33R: 7754-7757, Womack RE: Tab 7.  Womack does not disagree – Womack does not challenge the District Court's determination that there are no genuine issues of material fact on appeal.  Womack has therefore waived any argument that genuine issues of material fact preclude summary judgment.  *Calderon-Ontiveros v. INS,* 809 F.2d 1050, 1052 (5th Cir.1986) (issues not briefed are waived).

The Magistrate Judge found the following material facts to be undisputed in his Amended Report and Recommendation, which was accepted and adopted by the District Court:

- Womack+Hampton provided Trammell Crow entities with architectural drawings for four projects that are the subject of this lawsuit. 22R: 5155, Womack RE: Tab 10.

- Womack+Hampton drafted an Owner Architect Agreement for each project that covered the use of Womack+Hampton's architectural drawings by Trammell Crow.  *Id.*

- Each of the four Owner Architect Agreements were signed by both Womack+Hampton and by Trammell Crow.  *Id.*

16

•     The Owner Architect Agreements included language specifically addressing re-use of Womack+Hampton's architectural drawings, as follows:

## IX.  OWNERSHIP AND RE-USE OF DOCUMENTS

A.     The Drawings, Specifications, and other documents prepared by the Architect for this project are instruments of the Architect's service for use solely with respect to this project and the Architect shall be deemed the author of these documents and shall retain all common law, statutory, and other reserved right, including copyright.
. . . .

B.     The Owner agrees not to use, copy or cause to have copied, the drawings and specifications prepared for this project on subsequent phases or other sites without proper compensation to the Architect, which shall be based upon a mutually agreed upon of $150.00 per unit (base architectural fee), plus engineering services, plus contingent additional hourly charges and expenses for plan modifications necessary to adapt these plans and specifications to other sites.

22R: 5155-5156, Womack RE: Tab 10.

Womack claims that the District Court misinterpreted the undisputed material facts.  Womack's appeal therefore boils down to a single legal issue of contractual construction:  Was Trammell Crow's use of Womack's architectural drawings and specifications permissible under the Owner Architect Agreements?  If so then

Womack waived its right to sue for copyright infringement as a matter of law, and the District Court's summary judgment rulings should be affirmed.[8]

### III.  Trammell Crow's re-use of Womack's architectural drawings was clearly within the scope of the Owner Architect Agreements.

The District Court correctly determined that the express and unambiguous language of the Owner Architect Agreements granted Trammell Crow a non-exclusive license to use Womack's architectural drawings and specifications at other sites.  Because Womack granted these licenses in the contracts it drafted and because Trammell Crow's use of the drawings and specifications was within the scope of the licenses, Womack waived its right to sue for copyright infringement as a matter of law.

### A.  Texas law governs the construction of the Owner Architect Agreements.

State law supplies the rules of contract construction for a copyright license so long as those rules do not conflict with federal law.  *Fantastic Fakes, Inc. v. Pickwick*

---

[8] *See Sun Microsystems, Inc. v. Microsoft Corp.* 188 F.3d 1115, 1121 (9th Cir. 1999) (holding the grant of a non-exclusive license waives the right to sue for copyright infringement); *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998) ("A copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement"); *Fantastic Fakes, Inc. v. Pickwick Int'l, Inc.*, 661 F.2d 479, 483-84 (5th Cir. 1981) ("mere breach of covenant may support a claim of damages for breach of contract but will not disturb the remaining rights and obligations under the license including the authority to use the copyrighted material").

*Int'l, Inc.*, 661 F.2d at 483 ("A choice of law provision, therefore, merely designates the state whose law is to be applied to the extent its use is not preempted by or contrary to the . . . Copyright Act."); *see also* MELVILLE B. NIMMER & DAVID NIMMER, 3 NIMMER ON COPYRIGHT § 10.03[A][8] at 10-52 ("[I]t remains true that the vast bulk of copyright contractual issues must be resolved under state law, given the silence of the Copyright Act in addressing such issues as . . . how to construe ambiguous contractual language.") (quoting *id.* § 1.01[B][3][a]).

The Owner Architect Agreements specifically state that they are to be construed under the laws of Texas. 21R: 4932-4933; 21R: 4949; 21R: 4967; 21R: 4984; 21R: 5002-5003. The Texas Supreme Court recently reiterated the standard rules of contract construction:

> Whether a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered. If contract language can be given a certain or definite meaning, then it is not ambiguous; it should be interpreted by a court as a matter of law. Lack of clarity does not create an ambiguity, and not every difference in the interpretation of a contract amounts to an ambiguity. Rather, an ambiguity arises when an agreement is susceptible to more than one reasonable meaning after application of established rules of construction.

*Universal Health Services, Inc. v. Renaissance Women's Group*, 47 Tex. Sup. Ct. J. 20, 2003 WL 22232492 at *4 (Tex. September 30, 2003) (internal quotations and citations omitted). Because Section IX of the Owner Architect Agreements can be given a "certain and definite meaning," and is not susceptible to more than one reasonable meaning, it is not ambiguous. Indeed, Womack does not, and cannot contend that the undisputed language in the Owner Architect Agreements is ambiguous. The language is therefore properly interpreted as a matter of law.

Texas courts give unambiguous contracts such as the Owner Architect Agreements "their plain, ordinary, and generally accepted meaning." *Heritage Resources, Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). Womack argues, however, that Texas rules of contract construction violate the Copyright Act, and that "any conveyance of copyrightable subject matter" in the Owner Architect Agreements "must be strictly construed to preserve the rights of the copyright holder." Womack's Brief at 19.[9] Implicit in this statement is the argument that the unambiguous Owner

---

[9]Inexplicably, Womack states that the District Court's ruling was based on "the purported existence of an express license transferring *exclusive* rights" to Trammell Crow and that "it is undisputed that the Owner Architect Agreement . . . did not contain any conveyance of rights to TCR to retain any architect other than WHA." Womack Brief at 22 n.4 (emphasis added). In fact, the District Court's summary judgment ruling was based on a finding that Womack granted Trammell Crow a *nonexclusive license* to re-use the drawings and specifications, and Trammell Crow *does* contend the Agreements gave it the right to retain architects other than Womack. 33R: 7756,
(continued...)

Architect Agreements should not be given their plain, ordinary and generally accepted meaning. This argument is erroneous.

The Texas rules of construction do not contravene the Copyright Act or its policies. Nothing in the Copyright Act prohibits copyright holders from transferring rights in nonexclusive licenses, and, in fact, the Copyright Act clearly allows such transfers. *Carson v. Dynergy, Inc.*, 344 F.3d 446, 451 n. 5 (5th Cir. 2003) ("It is well-established in this circuit that a nonexclusive implied license need not be evidenced by a writing; . . . [i]t may be implied from conduct or granted orally."). Nor does anything in the Copyright Act require that unambiguous contract language be ignored. It has been observed that "state law rules of contract construction [usually] do not violate federal copyright policy, and the two work, hand in glove." NIMMER & NIMMER, *supra*, § 10.08, at 10-75; *see, e.g., Fantastic Fakes*, 661 F.2d at 483-483 (application of Georgia law did *not* undermine federal copyright policy, even though Georgia law dictated that the contractual language should be construed as a covenant and not a condition precedent, an interpretation which did not preserve the copyright holder's rights).

---

[9](...continued)
Womack RE: Tab 7.

At bottom, Womack's objection to these well-established rules is that their application results in a determination that the Agreements granted Trammell Crow licenses to re-use Womack's drawings and specifications on other sites. Womack Brief at 19-20. Womack's request that the agreements be "strictly construed" to preserve its copyright interests is, in reality, simply an attempt to have the Court disregard the unambiguous language Womack chose to use in the Agreements it drafted. Womack's request should be denied and the language in the agreements should be given its plain meaning.

**B.    The Owner Architect Agreements expressly allow Trammell Crow to re-use Womack's drawings and specifications on other sites.**

Because the undisputed language in Section IX of the Owner Architect Agreements is not ambiguous, this Court may determine its plain meaning as a matter of law. *Dewitt County Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999). The plain meaning of the Owner Architect Agreements is best determined by looking at the words used in the Agreements themselves. *See Preston Ridge Financial Servs. Corp. v. Tyler*, 796 S.W.2d 772, 775 (Tex. App. – Dallas 1990, writ denied) ("The intention of the parties is discovered primarily by reference to the words used in the contract").

Section IX of the Owner Architect Agreements is entitled "Ownership and *Re-Use of Documents.*" 21R: 4929; 21R: 4946; 21R: 4964; 21R: 4980; 21R: 4999, Trammell Crow RE: Tabs 7-11 (emphasis added). This title clearly indicates that this section is intended to describe the owner of the architectural works as well as the permissible re-uses that may be made of them.

Section IX(A) of the agreement provides that Womack owns the "drawings, specifications, and other documents" for the project. Section IX(A) also grants a nonexclusive license to Trammell Crow to use these works at the project covered by the agreement.

Section IX(B) of the agreement addresses re-use of Womack's drawings and specifications. As the District Court correctly determined, Section IX(B) of the agreements "expressly and unambiguously provide that Trammell Crow may 'use, copy or cause to have copied [Womack's architectural drawings] . . . for this or on subsequent phases or other sites'" with certain fees paid to Womack as detailed in the Agreement. 27R: 6461, Womack RE: Tab 6. The Owner Architect Agreements thus grant Trammell Crow nonexclusive licenses to re-use Womack's architectural drawings and specifications on other phases of development or on other sites altogether.

23

This interpretation makes sense. The Agreements protect Womack's ownership interest in the drawings and specifications and preserve Womack's right to a fee if the drawings are re-used, whether or not Womack is asked to perform additional engineering or other work. The Agreements also provide Womack additional compensation should Womack be asked to perform additional services. Trammell Crow is similarly protected, as Trammell Crow is permitted to re-use the drawings and specifications on other sites irrespective of Womack's continued involvement. The District Court's construction of the Agreements is thus not only consistent with the plain language of the Agreements, it is also sensible.

The meaning of the Owner Architect Agreements is best determined by simply looking at the words used in the Agreements. The ordinary meaning of these words is that Trammell Crow is allowed to use Womack's architectural works on other sites.

**C.     The Owner Architect Agreements allow Trammell Crow to re-use Womack's architectural drawings and specifications with other architects**.

Womack argues that the Agreements were limited in that they required Trammell Crow to retain Womack, and only Womack, in connection with use of the

drawings and specifications on other sites.  Womack Brief at 19-25.  Womack is incorrect.[10]

Both the Magistrate Judge and the District Court specifically rejected Womack's proffered interpretation, finding it "clearly strained in view of the language permitting use of the plans on another site and the reference to 'cause to have copied,'" and stating that it "directly contradicts" the plain meaning of the re-use clause, and would absurdly "bar [Trammell Crow] from employing a third party copy service."  33R: 7642, Womack RE: Tab 12; 33R: 7756, Womack RE: Tab 7.

The District Court is correct.  The re-use clause plainly anticipates that others, including other architects, may be involved with re-using the architectural works.  The Agreements clearly state that Trammell Crow may "cause to have copied" the drawings and specifications for use on "subsequent phases or other sites" and places *no limits* on whom Trammell Crow may engage to perform these services.  Contrary to Womack's assertions, the re-use clause does *not* state that *only* Womack may work further with the drawings and specifications.

---

[10]Womack appears to have abandoned its earlier argument that the Owner Architect Agreements did not grant Trammell Crow *any* license to re-use Womack's drawings.  32R: 7450-7451.

Moreover, Womack's suggested interpretation of the re-use clause to the contrary is illogical. Under Womack's strained theory, and contrary to the plain language of the Agreements, Trammell Crow could not re-use the drawings or specifications unless Womack was hired. If Womack were too busy to do the work, or simply insisted on unreasonably high fees, Trammell Crow's re-use rights would be valueless and it would be forced to hire another architecture firm to make drawings from scratch. Womack's interpretation would thus allow Womack to hold Trammell Crow hostage.[11] If this was really the intent of the parties, no Section IX(B) re-use clause was needed – Womack could have simply drafted language granting Trammell Crow a license to use the drawings and specifications on only the project for which they were provided, and any re-use of the drawings could have been left for future negotiation.

Conversely, the Agreements state that if Trammell Crow does use, copy or "cause[s] to have copied" the drawings and specifications, Trammell Crow owes Womack a set fee. If Womack were the only architecture firm which could work with

---

[11]*Cf. Foad Consulting Group, Inc. v. Musil Govan Azzalino,* 270 F.3d 821, 829 n.12 (9th Cir. 2001) (recognizing that architect's claim that developer had no right to use architect's plans for project after architect left project "would allow architectural or engineering firms to hold entire projects hostage, forcing the owner either to pay the firm off, continue to employ it, or forego the value of all work so far and start from scratch. . . . [O]ne would expect that a firm that intended to exercise such ongoing control over a project would clearly specify this in a contract.").

the materials, there would be no need to copy or cause others to copy the drawings and specifications because Womack, as the owner of the drawings and specifications, would already have copies of them.   Womack ignores the plain language in the Agreements.

Under the Owner Architect Agreements, Trammell Crow was free to engage Chiles and SDT in connection with its re-use of Womack's architectural drawings and specifications on other sites.

### D.     The Owner Architect Agreements allow Trammell Crow to modify Womack's architectural drawings and specifications.

Womack argues that even if the Owner Architect Agreements allowed Trammell Crow to re-use its drawings and specifications on other sites, they did not allow Trammell Crow or others to modify the drawings and specifications in connection with such use.   Womack Brief at 22.   This argument ignores common sense – architectural plans necessarily require modification when used on other sites.[12]

---

[12]The uncontroverted summary judgment evidence established: "When a design made for one site is used on another site, it is always necessary to modify the design to fit the new site, to comply with local regulations, and to update or improve the design.  If no design changes were allowed, then the right to use a design on another site would be worthless."  8R: 1896, Trammell Crow RE: Tab 16; *see also Foad Consulting Group, Inc.,* 270 F.3d at 838 (Kozinski, J., concurring) ("Any project, however, will undergo modifications along the way – whether because of site conditions that are
(continued...)

Several courts which have considered similar situations have ruled that nonexclusive licenses to *use* copyrighted material include the right to modify or adapt the material to fit the licensee's particular needs. For example, in *Kennedy v. National Juvenile Detention Ass'n*, 187 F.3d 690, 695 (7th Cir. 1999), the Seventh Circuit considered whether a nonexclusive license which provided that the licensee of a consultant's copyrighted report could "use, duplicate and disclose [the report] . . . *for any purpose whatsoever*" included the right to make derivative works from the report. The Court held that the word "use" in the license necessarily included the right to make derivative works. *Id.*

Similarly, in *Hogan Sys., Inc. v. Cybersource Int'l, Inc.*, 158 F.3d 319 (5th Cir. 1998), this Court considered the scope of an "incidental exposure clause" in a software license. The clause at issue provided that the licensee of software could "provide or otherwise make available" the software to others while on the licensee's premises. *Id.* at 323. The software's copyright holder read this clause to prohibit the licensee from engaging others to "use, copy or adapt" the software. *Id.* This Court

---

[12](...continued)
discovered during construction, because the city planners make unanticipated demands, or because the economics of the situation change. To regard each such modification as resulting in a new project for purposes of the license would be to render the implied license useless. . . . Defendants did not exceed the scope of their license . . . .").

rejected this argument finding: "what [the licensee] could itself do under the License, [the licensee] may use a contractor to do." *Id.* at 324. A similar analysis in the present case leads to the conclusion that Trammell Crow's license to "use, copy or cause to have copied" Womack's drawings and specification for use at other sites includes the right to make modifications necessary to adapt the drawings and specifications to other sites.

Womack cites *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081 (9th Cir. 1989), and *Gilliam v. American Broadcasting Cos., Inc.*, 538 F.2d 14 (2nd Cir. 1976) as contrary authority. Womack Brief at 22-25. Womack's reliance on these cases, however, is misplaced, as both cases are readily distinguishable.

In *Gilliam*, the writers and performers behind the "Monty Python" comedy troupe sued to prevent ABC from broadcasting redacted episodes of the British television series *Monty Python's Flying Circus* in the United States. *Gilliam*, 538 F.2d at 17. ABC obtained American broadcast licensing rights to the programs from the BBC. The BBC had rights to the programs *vis a vis* a "scriptwriters' agreement" between Monty Python and the BBC, which gave the BBC broadcasting rights in the United States, but did *not* give the BBC the right to "alter the program once it has been recorded." *Id.* When ABC proposed broadcasting redacted episodes, Monty

29

Python sued, arguing that it had not licensed the right to make derivative works of its *recorded* programs and thus the airing of redacted programs would amount to copyright infringement. *Id.* at 17-18. The Second Circuit agreed and directed the lower court to issue a preliminary injunction prohibiting ABC from broadcasting redacted versions of the Monty Python episodes. *Id.* at 26.

*Gilliam* presented a very different situation from this case. The scriptwriters' agreement in *Gilliam* was materially different from the Owner Architect Agreements at issue here. The two contracts use different language, address different concerns and cover very different subject matter. The scriptwriters' agreement contained no language which could be interpreted as a license to modify the programs once recorded. *Gilliam*, 538 F.2d at 22 ("A reading of the contract seems to indicate that Monty Python obtained control over editing the script only to ensure control over the program recorded from that script."). The Owner Architect Agreements, however, contain an entire section devoted to "Re-Use" of drawings and specifications. Unlike the scriptwriters' agreements in *Gilliam* – which preserved the comedy troupe's right of control and did not allow the BBC to modify recorded programs – the Owner Architect Agreements specifically allow Trammell Crow to re-use the drawings on other sites. *Gilliam* is thus inapposite and does not support Womack's argument.

*S.O.S., Inc. v. Payday, Inc.*,  886 F.2d 1081 (9th Cir. 1989),also involved circumstances and a contract very different from those present here.  In *S.O.S.*, Payday licensed the "right of use" of S.O.S.'s software program.  The program was not delivered to Payday, but ran on S.O.S.'s computer and provided output to Payday.  *Id.* at 1088 n. 9.  A former S.O.S. employee took the software program from S.O.S.'s computer, loaded it onto Payday's computers and then made changes to the software program.  *Id.* at 1084.  When S.O.S. learned of this, it sued Payday for copyright infringement and theft of trade secrets.  *Id.*  The Ninth Circuit held that in these circumstances Payday's copying of, and modifications to, the software program exceeded the scope of the "right to use" license.

The District Court in this case correctly distinguished *S.O.S.* because "the re-use clause in this case is much broader than the clause addressed in the *S.O.S.* case."  27R: 6461, Womack RE: Tab 6.  Unlike the limited "right to use" license in *S.O.S.* – which was intended to allow one company to use a software program without ever possessing a copy of it –  the license here expressly grants Trammell Crow the right to maintain the drawings and specifications as well as the right to use, copy and have the drawings and specifications copied for use on subsequent phases or other sites.

In fact, the *S.O.S.* Court itself acknowledged that it might have given the "right

of use" clause a broader interpretation if the contract had been between S.O.S. and another software developer (instead of a software user), presumably because another software developer would have a need to modify a software program. "Use" in that context could therefore include the right to modify the program. *Id.* at 1088 n. 8. Here, based on its past dealings with Trammell Crow, Womack knew Trammell Crow was a real estate developer and knew that Trammell Crow might want or need to modify the drawings and specifications for developments on other sites. Accordingly, *S.O.S.* does not support Womack's position.

Because Trammell Crow's re-use of the drawings and schematics was within the scope of the Owner Architect Agreements, the District Court correctly concluded that Womack's copyright infringement claims fail as a matter of law. The District Court's ruling should be affirmed.

### E.     The Owner Architect Agreements do not contain a condition precedent to Trammell Crow's re-use of the drawings and specifications.

Womack's claim that payment of the re-use fee was a condition precedent to Trammell Crow's right to re-use its drawings and specifications is contrary to the plain language of the Agreements. Under Texas law, conditions precedent are disfavored, and must be clearly and unambiguously expressed before they are read

into a contract.  *See Criswell v. European Crossroads Shopping Center, Ltd.*, 792 S.W.2d 945, 951 (Tex. 1990); *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976).  Courts do not construe contract provisions as conditions precedent "unless they are compelled to do so by language that may be construed in no other way."  *Cal-Tex Lumber Co. v. Owens Handle Co.*, 989 S.W.2d 802, 809 (Tex. App. – Tyler 1999, no pet.)  The language Womack contends gives rise to a condition precedent – "the [o]wner agrees not to use, copy, or cause to have copied . . . without proper compensation . . ."– simply does not clearly and unambiguously contain the words necessary to create a condition precedent.

Conditions precedent are typically evidenced by words such as "if," "provided that," or "on condition that."  *Texas Dep't of Housing and Community Affairs v. Verex Assurance, Inc.*, 68 F.3d 922, 928 (5th Cir. 1995) ("In order to make performance specifically conditional, a term such as 'if,' 'provided that,' 'on condition that,' or some similar phrase of conditional language must normally be included.  If no such language is used, the terms will be construed as a *covenant*.") (applying Texas law) (emphasis added); *see also Hohenberg,* 537 S.W.2d at 3.  The words "if," "provided that," and "on condition that" or similar phrases are conspicuously absent from the re-use clause in the Owner Architect Agreements.

33

In addition, a contractual provision will not be construed as a condition precedent unless the provision describes "an event, not certain to occur, which must occur, unless its nonoccurrence is excused, *before* performance under a contract becomes due." RESTATEMENT (SECOND) OF CONTRACTS § 224 (1981) (emphasis added); *see also Texas Dep't of Housing and Community Affairs*, 68 F.3d at 928 ("Conditions precedent are those acts or events that must occur before a contract arises. . . ."). Here, the Owner Architect Agreements do not require Trammell Crow to pay a re-use fee *prior to* re-using Womack's drawings. As the Agreements do not require Trammell Crow to pay a fee before re-using the drawings, the Agreements do not contain a condition precedent. *See RT Computer Graphics, Inc. v. United States*, 44 Fed. Cl. 747, 755 (1999) (finding that agreement to give credit to copyright holder for designs of stamp borders was not a condition precedent to use of the border designs because there was "no clear signal that credit for the border designs was a condition which had to be met prior to the Postal Service's use of the border designs").

While the Agreements do not require Trammell Crow to pay the re-use fee prior to re-using Womack's drawings, the Agreements do contain Trammell Crow's promise to pay the re-use fee plus additional fees for additional work. An agreement

to pay is a covenant, not a condition precedent. *Cf. Graham v. James*, 144 F.3d at 237 ("We think that the payment of royalties and the inclusion of a notice crediting James' authorship are to be considered covenants, not conditions."); *Effect Assocs., Inc. v. Cohen*, 908 F.2d 555, 559 n.7 (9th Cir. 1990) (holding that full payment for special effects developed for a movie was not a condition precedent to the grant of a license to use the effects in the movie and that failure to make full payment prior to using the effects did not give rise to copyright infringement action); *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 778 (7th Cir. 1996) (full payment for architectural designs was not a condition precedent to the existence of a license to use the designs). Accordingly, Trammell Crow's failure to pay the re-use fee might have given rise to a breach of contract claim, at most, but it did not give rise to copyright infringement claims.

The Owner Architect Agreements at issue here do not contain a condition precedent because they are devoid of the necessary unambiguous language which must be present for there to be a condition precedent.

## F.    The Owner Architect Agreements are not option contracts.

Section IX(B) of the Owner Architect Agreements is not an option contract because it does not grant Trammell Crow an "option" to re-use Womack's drawings

35

and specifications. As stated above, the Agreements provide that Trammell Crow may "use, copy, or cause to have copied" Womack's drawings "on subsequent phases or other sites" for a set fee plus additional compensation for any additional work. The Owner Architect Agreements do not state that Trammell Crow may exercise an "option" to re-use the drawings by paying a fee. If Womack had wanted Trammell Crow to have an option to re-use the plans which it could exercise by paying a fee, Womack could have stated that in the Agreements Womack drafted. Womack, however, did not do this.

"To be binding, an option contract must (1) be signed by the offeror; (2) recite a purported consideration for making the offer; and (3) propose an exchange on fair terms *within a reasonable time*." *Merritt-Campbell, Inc. v. RxP Products, Inc.*, 164 F.3d 957, 964 (5th Cir. 1999) (emphasis added). Section IX(B) is not an option contract because the second and third elements above fail. First, Section IX(B) of the Owner Architect Agreements does not recite any consideration for Womack's "offer" to re-use the drawings and schematics. *Cf. Merritt-Campbell*, 164 F.3d at 964 ("the agreement states a consideration of the sum of ten dollars for making the

offer.").[13]    Second, Section IX(B) does not contain *any* time limit, much less a reasonable time limit, and thus omits the last element of an option contract. *Cf. Id.* ("M-C had the option to purchase [gas] for five years . . . We find these terms to be fair and within a reasonable time.").

Womack is not an optioner and Trammell Crow is not an optionee because Section IX(B) of the Owner Architect Agreements does not meet the requirements of an option contract. Thus the Owner Architect Agreements are not option contract as a matter of law.

### G.    Should the Court look to the parties' course of dealing concerning the Owner Architect Agreements, it supports the District Court's ruling.

Although the District Court's decision was based solely on the language in the Owner Architect Agreements, Womack asks this Court to look outside the four corners of the Agreements to find that it did not agree that Trammell Crow could re-use its drawings and specifications on other sites. Womack Brief at 20-21. Texas law is clear that extrinsic evidence of the parties' dealings is inadmissable to show the intention of the parties with respect to an otherwise unambiguous contract. *See City*

---

[13]Of course, Trammell Crow's agreement to pay various fees to Womack was consideration supporting the contract as a whole, including the covenants contained in Section IX(B).

*of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex. 1968) ("It is the general rule of the law of contracts that where an unambiguous writing has been entered into between the parties, the courts will give effect to the intention of the parties as expressed or as is apparent in the writing.  In the usual case, the instrument alone will be deemed to express the intention of the parties for it is objective, not subjective, intent that controls.").[14]  Trammell Crow submits that consideration of evidence outside the four corners of the Owner Architect Agreements is therefore unnecessary, and indeed improper.

Nevertheless, the dealings between the parties establish that Womack understood and intended the Owner Architect Agreements to grant Trammell Crow the right to re-use the drawings and specifications on other sites without prior payment of a fee.  The parties' course of dealings is entirely consistent with the District Court's interpretation of the Owner Architect Agreements.

In September 1998, Womack concluded that Trammell Crow and architect Gary Chiles had re-used its architectural drawings in connection with another project without its permission.  Womack, however, did not object and complain to Trammell

---

[14]To the extent there are ambiguities that may be resolved as a matter of law, the contract should be construed against the drafter. *Forest Oil Corp. v. Strata Energy, Inc.*, 929 F.2d 1039, 1043 (5th Cir. 1991) (applying Texas law).

Crow that payment had not been made first or that the Owner Architect Agreement

prohibited use of the drawings on another project, by another architect. Instead, on

September 30, 1998, Womack wrote Trammell Crow, and, referring to the Owner

Architect Agreement, stated that a re-use fee was due. Womack's letter stated:

> *Our original agreement* with Trammell Crow Residential,
> Houston, for Windfern *calls for a $150.00 per unit Re-Use
> fee for future use of our plans.* Because of our long
> relationship with your company and the fact that the plans
> were redrafted by Mr. Chiles, we are willing to accept one
> half of that amount, *i.e.* $75.00 per unit for a total Use Fee
> of $27,450.00. *Any future reuse of this product will be
> priced per the original written agreement.*

4R: 917, Trammell Crow RE: Tab 14 (emphasis added).

On October 8, 1998, Trammell Crow wrote to Womack and asked that

Womack waive the fee. 4R: 920, Trammell Crow RE: Tab 15. Womack never

responded and Trammell Crow understood that Womack had agreed to waive the fee.

4R: 817-822, Trammell Crow RE: Tab 12; 4R: 824-831, Trammell Crow RE: Tab 13.

Trammell Crow did not hear from Womack on this subject until this lawsuit was filed

almost three years later. 4R: 836-837; 4R: 820, Trammell Crow RE: Tab 12; 4R: 827,

Trammell Crow RE: Tab 13.

Until it filed suit, Womack acted as if Trammell Crow's re-use of its architectural drawings was well within the scope of the Owner Architect Agreements. When Womack believed that Trammell Crow was re-using its drawings, it did not object that such use infringed its copyrights, that a condition precedent had been ignored or that the Agreements prohibited use of its drawings on other sites by other architects. Instead, Womack sent Trammell Crow a letter which specifically referred to the Owner Architect Agreement which it had drafted, stated that the re-use fee was due, and offered to accept one half of that fee "[b]ecause of our long relationship with your company and the fact that the plans were redrafted by Mr. Chiles." 4R: 917; Trammell Crow RE: Tab 14. Womack even acknowledged that its drawings could be re-used by Trammell Crow on other additional projects stating "any future reuse of this product will be priced per the original agreement." *Id.*

If Womack truly believed Trammell Crow's and Chiles' re-use of its drawings or specifications infringed its copyrights, Womack would not have sent this letter – Womack would have sent Trammell Crow and Chiles a cease and desist letter. This Womack did not do.

Setting Womack's post-lawsuit protestations to the side, Womack's past actions are entirely consistent with the District Court's reading of the Agreements.

40

**H.    In the alternative, Trammell Crow had an implied, nonexclusive license to make derivative works from Womack's drawings and specifications**.

The Owner Architect Agreements need not "expressly grant" Trammell Crow the right to make derivative works in order for Trammell Crow to have a nonexclusive license to modify Womack's drawings for use on other sites. *Lulirama Ltd., Inc. v. Axcess Broadcast Svs., Inc.*, 128 F.3d 872, 879 (5th Cir. 1997) ("While the Copyright Act requires that exclusive licenses be evidenced by a writing, no such writing requirement applies to nonexclusive licenses).

An implied nonexclusive license arises when "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes the particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work." *Lulirama,* 128 F.3d at 879 (quotations and citations omitted).  These requisites are easily met here: Womack prepared drawings and schematics for Trammell Crow at Trammell Crow's request, and Womack clearly understood Trammell Crow would likely re-use them on other sites as Section IX(B) allowed Trammell Crow to re-use them on other sites.  When Trammell Crow did re-use the drawings and schematics, Womack did not complain that such use was not permitted by the Agreements, but instead asked for payment of

41

a partial re-use fee and stated that "any future reuse of this product will be priced per the original written agreement."  4R: 917, Trammell Crow RE: Tab 14.  Womack clearly intended Trammell Crow to re-use its drawings and schematics on other sites, and thus, even if Trammell Crow did not have an express license to re-use Womack's drawings and schematics on other sites, it had an implied nonexclusive license to do so.

Several courts have found implied, nonexclusive licenses to make derivative works arise when an architect provides copyrighted architectural plans to a developer for use on a project.  In *I.A.E., Inc. v. Shaver*, 74 F.3d 768 (7th Cir. 1996), for example, an architect produced design drawings for an airport facility pursuant to a written contract with the facility's developer.  In the agreement, the architect agreed to produce the drawings and the developer agreed to pay him $10,000 plus expenses. *Id.* at 770.  After the architect prepared the design drawings, the developer hired another architectural firm and provided the design drawings to it for use in completion of the project. *Id.* at 770-771.  In the resulting suit, the architect claimed that he had not licensed his drawings for use by another architectural firm and, alternatively, that if there was a license, the developer exceeded the scope of the license by allowing another architect to use his designs. *Id.* at 773, 778.

42

The Seventh Circuit rejected both of these arguments. First, the Court held that the contract was clear and unambiguous that the architect provided the designs specifically to be used on the project without regard to whether he would be the architect throughout the project: "although Mr. Shaver tells us that he anticipated he would be the architect to take the Project to completion, nothing in his contract gives the slightest indication of that belief." *Id.* at 776-777. Because the designs were provided for the project, the developer had an implied, nonexclusive license to use the designs on the project. *Id.* at 777.

The Court also rejected the architect's argument that even if there were an implied license, the second architect's use of his designs was beyond its scope. Because the language in the contract allowed the developer to use the architect's designs to "describe the agreed scope of the Project" the Court found that the architect's "assertion that he did not grant the right to further use of his drawings unless he was the architect continuing the Project is simply not supported by the contract." *Id.* at 778. Thus, the Court held the second architecture firm's use of the first architect's designs was within the scope of the license granted by the architect. *Id.*

Similarly, in *Foad Consulting Group, Inc. v. Musil Govan Azzalino,* 270 F.3d. 821 (9th Cir. 1999), another architectural copyright case, the Ninth Circuit held that a contract between an architectural firm and a shopping mall developer which, in essence, provided that the architectural firm would prepare designs for a development for a set fee, contained an implied license that allowed the developer to make derivative works from the designs. *Id.* at 829-830. This was true even though the contract between the developer and architect contained no language permitting the developer to make derivative works from the architect's designs. *Id.* at 831.

The facts in this case are analogous to both *I.A.E.* and *Foad.* Womack provided architectural drawings to Trammell Crow under agreements which clearly allowed Trammell Crow to use the drawings on other sites, and did *not* prevent Trammell Crow from retaining other architects in connection with such use. Under the reasoning of *I.A.E.* and *Foad*, Trammell Crow had an implied nonexclusive license to have other architects make derivative works from the drawings provided by Womack, even if Womack's Owner Architect Agreements with Trammell Crow did not explicitly grant Trammell Crow that right.

Trammell Crow's re-use of Womack's architectural drawings and schematics was within the scope of the express or implied nonexclusive license Womack granted

44

Trammell Crow. As Womack licensed the right to re-use its drawings and schematics on other sites, Womack waived its right to sue for copyright infringement as a matter of law. The District Court properly entered summary judgment in favor of Trammell Crow on Womack's copyright infringement claims, and Trammell Crow respectfully prays that those rulings be affirmed.

### IV. The District Court erred in failing to award prevailing Defendant Trammell Crow its attorneys' fees and costs under the Copyright Act.

As discussed above, the District Court correctly entered summary judgment in favor of Trammell Crow on all of Womack's claims under the Copyright Act. Trammell Crow was therefore the "prevailing party" in this copyright action. Accordingly, Trammell Crow applied to the District Court under 17 U.S.C. § 505 to recover the costs and attorneys' fees it incurred in successfully defending against Womack's copyright claims. 35R: 7959-7986. However, the District Court denied the Application, refusing to award Trammell Crow *a single penny* of its costs and attorneys' fees. Trammell Crow timely appealed the denial of its Application. 39R: 9181-9183, Trammell Crow RE: Tab 4; 39R: 9179-9180, Trammell Crow RE: Tab 5.

Trammell Crow respectfully prays that this Court remand this part of the case to the District Court for a determination of an appropriate award of costs and attorneys' fees to Trammell Crow.

## A.     Standard of review

In its Order denying Trammell Crow's Application, the District Court approved and accepted the Magistrate Judge's report and recommendation.  Trammell Crow contends, first, that the District Court applied incorrect legal standards when it denied Trammell Crow's application for costs and fees; and, second that the District Court nevertheless abused its discretion by failing to award any attorneys' fees and costs to Trammell Crow.  The application of an incorrect legal standard is a question of law, subject to *de novo* review. *Hogan Sys., Inc. v. Cybresource Int'l, Inc.*, 158 F.3d at 325 (citing *Elvis Presley Enters. v. Capece*, 141 F.3d 188, 196 (5th Cir. 1998)). The District Court's exercise of discretion is subject to review for an abuse of discretion. *Hogan*, 158 F.3d at 325 (citing *McGaughey v. Twentieth Century Fox Film Corp.*, 12 F.3d 62, 65 (5th Cir. 1994).

**B.    The District Court erred legally when it found that Trammell Crow was not a "prevailing party" within the meaning of 17 U.S.C. § 505 of the Copyright Act.**

Section 505 of the Copyright Act ("Section 505") provides:

In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to *the prevailing party* as part of the costs.

17 U.S.C. § 505 (emphasis added).

In *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994), the Supreme Court addressed a circuit split concerning the proper application of Section 505. After careful analysis, the *Fogerty* Court adopted an "'evenhanded' approach in which no distinction is made between prevailing plaintiffs and prevailing defendants," and expressly rejected the "dual standard," pursuant to which "prevailing plaintiffs [were] generally awarded attorneys' fees as a matter of course, while prevailing defendants [were required to] show that the original suit was frivolous or brought in bad faith." *Id.* at 520-21. The *Fogerty* Court reversed a denial of attorneys' fees to a prevailing copyright defendant because the Court of Appeals had "erroneously held petitioner, the prevailing defendant, to a more stringent standard than that applicable to a prevailing plaintiff." *Id.* at 534-35.

47

This Circuit has repeatedly and consistently held that although attorneys' fees under Section 505 are awarded in the trial courts' discretion, the award of attorneys' fees is the "rule rather than the exception," and they "should be awarded routinely." *McGaughey*, 12 F.3d at 65*, quoting *Micromanipulator Co. v. Bough*, 779 F.2d 255, 259 (5th Cir. 1985) (citing *Engle v. Teleprompter Corp.*, 732 F.2d 1238, 1241 (5th Cir. 1984)).  *See also Alameda Films S.A. de C.V. v. Authors Rights Restoration Corp.*, 331 F.3d 472, 483 (5th Cir. 2003, pet. filed 72 USLW 3248 (Sept. 23, 2003))*; Hogan*, 158 F.3d at 325; *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 65 (5th Cir. 1992) ("[The standards applicable in a Lanham Act case] necessarily will differ from the more liberal approach taken in copyright actions, in which the court need not find the case 'exceptional' to award fees. . . .   In fact, attorneys' fees in copyright actions are 'the rule rather than the exception.'").

In his Report and Recommendation, which was approved and accepted by the District Court, the Magistrate Judge observed:

> [T]he grant of summary judgment to the Crow Defendants was *essentially a finding in agreement with their contention that this action is not ruled by the Copyright Act*.  The Magistrate Court thus finds the current request by the Crow Defendants for relief under that very act ironic, to say the least. The Crow Defendants have, therefore, not established the purposes of the Copyright Act would be served by granting their request for an award of fees and costs.

39R: 9153, Trammell Crow RE: Tab 6 (emphasis added).  The Court thus found that Trammell Crow's successful license defense removed Womack's copyright infringement actions from the authority of the Copyright Act and made Section 505 of the Act inapplicable.  Trammell Crow respectfully submits that this was legal error.

A cause of action "arises under" the law that the Plaintiff invokes, and a plaintiff can thereby choose the court whose jurisdiction he wishes to enjoy. *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 586 (1916) (Holmes, J.) ("[A] suit arises under the law that creates the action"); *see also MCA TV, Ltd., v. Public Interest Corp.*, 171 F.3d 1265, 1269-70 (11th Cir. 1999), citing *T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 828 (2d Cir. 1964), *cert. denied*, 381 U.S. 915(1965) (Friendly, J.) ("An action 'arises under' the Copyright Act where the complaint 'is for a remedy expressly granted by the Act, e.g., a suit for infringement.'"). Further, neither the plaintiff's anticipation, nor a defendant's assertion, of a defense will alter the law under which the plaintiff's cause of action arises, nor will it alter the court's jurisdiction.  *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149 (1908); *see also Scandinavian Satellite Sys. v. Prime TV Ltd.*, 291 F.3d 839, 842 (D.C. Cir. 2002) (holding that defenses outside of the Copyright

Act were not sufficient to deprive the federal court of the jurisdiction established by the plaintiff bringing its infringement claim under the Copyright Act).

It is clear that all of Womack's claims against Trammell Crow were for copyright infringement and that all of Womack's claims arose under the Copyright Act. In fact, Womack alleged causes of action only under the Copyright Act and enjoyed federal jurisdiction because of its reliance on the Copyright Act. Trammell Crow's successful defense did not divest the federal court of its jurisdiction. Just as certainly, Trammell Crow's successful defense did not take Womack's cause of action outside of the Copyright Act and rob Trammell Crow of its entitlement to recovery under Section 505.

It is also clear that Trammell Crow was a "prevailing party" within the meaning of Section 505. The District Court entered summary judgment in favor of Trammell Crow and against Womack on all of Womack's copyright claims. Nevertheless, the District Court found that Trammell Crow's successful license defense deprived Trammell Crow of the benefit of Section 505.

Extending the logic of the District Court's conclusion reveals its error. *Any* defendant who successfully asserts a license defense in a case under the Copyright Act establishes that the Plaintiff cannot recover under the Act. That being so, the

50

District Court's logic would deny Section 505 recovery to *any* defendant prevailing on such a defense, because of the "irony" that the defendant was seeking to invoke the very law it had proven to be inapplicable. This approach, which penalizes a prevailing defendant and effectively refuses to recognize the prevailing defendant as a "prevailing party," is inconsistent with *Fogerty*.

This approach is also inconsistent with case law in this Circuit. This Court has already held, in a case with facts similar to those here, that it will treat a defendant prevailing on a license defense as a "prevailing party" under the Copyright Act. In *Hogan*, this Circuit considered an award of attorney's fees to prevailing defendants. As in this case, summary judgment had been awarded to the *Hogan* defendants on the plaintiffs' copyright infringement claims because the court found the terms of a license agreement "clearly and unambiguously" sheltered the defendants' activities. *Hogan*, 158 F.3d at 322. The lower court awarded the defendants their costs and attorneys' fees in accordance with applicable Fifth Circuit precedent requiring costs and attorneys fees to be awarded routinely in copyright cases. *Id.* at 325. This Court affirmed that costs and attorneys' fees had been properly awarded.

*Hogan* therefore establishes that in this Circuit a defendant prevailing on a license defense in a copyright infringement case is to be treated evenhandedly, in

accordance with *Fogerty*, including enjoying the benefit of this Circuit's "rule" under which costs and fees are awarded "routinely" under Section 505.

Trammell Crow respectfully submits that the District Court erred legally when it failed to treat Trammell Crow as a prevailing party under the Copyright Act.

### C.     The District Court erred legally when it concluded that an award to Trammell Crow would not further the purposes of the Copyright Act by increasing public exposure to the architects' drawings.

*Fogerty* manifests the Supreme Court's concern that furtherance of the purposes of the Copyright Act should be the driving force underlying a court's Section 505 award determination.   First, when endorsing the Third Circuit's "nonexclusive" list of factors, the *Fogerty* Court emphasized that the factors it mentioned:

> may be used, to guide courts' discretion, *so long as such factors are faithful to the purposes of the Copyright Act* and are applied to prevailing plaintiffs and defendants in an evenhanded manner.

*Fogerty*, 510 U.S. 534 n.19 (citing *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3rd Cir. 1986)) (emphasis added).

Second, *Fogerty* justified its rejection of the dual standard (unfairly subjecting prevailing defendants to a stricter standard) in large part by highlighting the role that a prevailing defendant can play in promoting the purposes of the Act:

52

Because copyright law ultimately serves the purpose of enriching the general public through access to creative works, it is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible. To that end, defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement. In the case before us, the successful defense . . . increased public exposure to a musical work that could, as a result, lead to further creative pieces. *Thus a successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright.*

*Id.* at 527 (emphasis added). From this, the *Fogerty* Court made it abundantly clear that a prevailing defendant can promote the purposes of the Act -- increasing public exposure to ideas and works -- just as effectively as a prevailing plaintiff.

Trammell Crow submits that the District Court's attorney fee ruling contravenes *Fogerty*, and the concerns at the foundation of that opinion, because an award of costs and fees in this case would advance the policies and purposes of the Act. Womack invoked the Act in an effort to prevent Trammell Crow from re-using architectural drawings. In doing so, Womack improperly attempted to delimit Trammell Crow's rightful use of the drawings and correspondingly decrease public exposure to the drawings. This despite the fact that the District Court determined that Trammell Crow had the right to re-use Womack's architectural drawings under the

unambiguous terms of the parties' Owner Architect Agreements.    27R: 6461, Womack RE: Tab 6.  Just as in *Fogerty*, the District Court's summary judgment ruling had the concomitant effect of furthering a central purpose of the Copyright Act – *increasing public exposure to ideas and works*.  It is submitted that an award to Trammell Crow would further the policies and purposes of the Act, as Trammell Crow's successful defense helped to "demarcate[] as clearly as possible" "the boundaries of copyright law." *Fogerty*, 510 U.S. at 527.

Trammell Crow respectfully submits that an award of its costs and fees under Section 505 is appropriate and consistent with *Fogerty*.

> **D.     The District Court erred legally when it held that "frivolousness" and "objective unreasonableness" are prerequisites to an award of costs and fees under Section 505 of the Copyright Act.**

The *Fogerty* Court stated that certain "nonexclusive" factors routinely considered by the Third Circuit in making Section 505 awards "*may* be used to guide a courts' discretion, *so long as such factors are faithful to the purposes of the Copyright Act and are applied to prevailing plaintiffs and defendants in an evenhanded manner.*" *Fogerty*, 510 U.S. 534 n.19 (citing *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 156 (3rd Cir. 1986)) (emphasis added).  Those factors include frivolousness, objective unreasonableness (both in the factual and in the legal

components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence. *Id.* As *Fogerty* makes clear, the factors are not to be treated as prerequisites to a Section 505 award, nor are courts required to apply these factors under Section 505.

Here, the District Court found that Womack's claims were neither frivolous nor objectively unreasonable, and determined that as a result an award of attorneys' fees and costs was inappropriate. 39R: 9151-9154, Trammell Crow RE: Tab 6. Trammell Crow submits that the District Court erred legally by applying "nonexclusive" factors in the *Fogerty* opinion as prerequisites to an award of costs and fees.[15]

The District Court's application of the factors as though they were prerequisites to an award under Section 505 constitutes legal error. Indeed, the *Fogerty* Court reversed the Ninth Circuit's denial of attorneys' fees to a prevailing copyright defendant precisely because the lower court had required the defendant to show that the infringement claim was frivolous and brought in bad faith. *Fogerty*, 510 U.S. at 520-21. *See also Hogan*, 158 F.3d at 325-26. It has since been specifically held that

---

[15]The Report and Recommendation of the Magistrate Judge erroneously states: "The Crow Defendants maintain they are entitled to attorneys' fees and costs *because* Womack+Hampton's claims were frivolous and objectively unreasonable, plus an award would advance considerations of compensation and deterrence." 39R: 9151-9152, Trammell Crow RE: Tab 6. Trammell Crow never cited the *Fogerty* factors as being prerequisites to an award under Section 505. *See* 34R: 7959-7986.

a finding of frivolousness is *not* a prerequisite to an award of attorneys' fees under the Act. *See Matthews v. Freedman*, 157 F.3d 25, 29 (1st Cir. 1998) (awarding attorneys' fees to defendant even though plaintiff's copyright claims were "not frivolous" and "not brought in bad faith"); *Harris Custom Builders, Inc. v. Hoffmeyer*, 140 F.3d 728, 730 (7th Cir. 1998) ("a prevailing defendant need not show that the case was brought in bad faith or that it was frivolous"); *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 571 (7th Cir. 2003) ("A showing of bad faith or frivolousness is no longer required to receive attorney's fees.").

Trammell Crow respectfully submits that the District Court's denial of its application for costs and fees under Section 505, premised upon an application of *Fogerty*'s nonexclusive factors as prerequisites to such an award, constitutes legal error.

**E.     The District Court abused its discretion when it refused to award Trammell Crow any of its costs and attorneys' fees incurred in successfully defending against Womack's copyright claims**.

Trammell Crow also submits that the District Court abused its discretion when it declined to award Trammell Crow anything on its application for costs and fees under Section 505.

56

Trammell Crow submits that its status as prevailing party, coupled with the law of this Circuit governing Section 505 awards, justifies an award of costs and fees to it. Trammell Crow submits that, although the *Fogerty* factors are not prerequisites to an award, the presence of three of *Fogerty*'s nonexclusive factors in the case strengthens Trammell Crow's entitlement to an award. Their presence further supports Trammell Crow's position that denial of Trammell Crow's application in its entirety was an abuse of discretion.

### 1.     Frivolousness

Womack's infringement claims were frivolous, in that Womack sued for copyright infringement when it had expressly licensed the use of its purported copyrights in the Owner Architect Agreements. Womack sued Trammell Crow for copyright infringement despite the fact that Womack's Owner Architect Agreements with Trammel Crow, which Womack itself drafted, "expressly and unambiguously"[16] provided that Trammell Crow could re-use Womack's drawings and specifications. Womack's copyright claims forced Trammell Crow to undertake costly discovery and legal research concerning issues such as whether Womack's architectural drawings

---

[16] 22R: 5157, Womack RE: Tab 10. This finding was adopted by the District Court. 27R: 6461, Womack RE: Tab 6.

were original and creative, whether they included "standard configurations," and whether the allegedly infringing structures were "substantially similar" to Womack's works within the meaning of the Copyright Act.  Similarly, Womack's strategy of suing *eighteen* different Trammell Crow entities and related individuals in two separate copyright actions filed in separate federal districts, and filing 81 motions, necessarily magnified the costs Trammell Crow incurred to defend themselves.  *See* Trammell Crow RE: Tabs 1-3.

Womack's forty million dollar damages claim was also without basis in law and was frivolous.   Womack ignored and disregarded the burden shifting contemplated by 17 U.S.C. § 504(a), under which a copyright owner presents proof of an alleged infringer's gross revenue, and the alleged infringer then establishes its "deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b).  Womack took the untenable position that it was entitled to *all gross revenues* from the sale of the allegedly infringing apartment

complexes. This is not, and has never been, the law.[17]  Womack's position with respect to liability as well as damages was without basis, and was frivolous.

Womack's copyright infringement claims were frivolous.

### 2.    Objective unreasonableness

Womack's copyright infringement claims were also objectively unreasonable. Womack unreasonably filed two federal copyright infringement actions in two separate courts,[18] even though the Owner Architect Agreements it had drafted clearly and unambiguously granted Trammell Crow a nonexclusive license to re-use its drawings and specifications and thereby waived its right to sue for copyright infringement as a matter of law. *See* 27R: 6461, Womack RE: Tab 6. Womack was also objectively unreasonable in ignoring abundant evidence and precedent and

---

[17] *See Hamil America, Inc. v. GFI*, 193 F.3d 92, 107-08 (2d Cir. 1999), *cert. denied*, 528 U.S. 1160 (2000) (overhead expenses may be deducted from gross revenues); *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 405 (1940) ("general overhead expenses–were appropriately deducted from gross revenue"); 2 PAUL GOLDSTEIN, COPYRIGHT § 12.1.2.1.d (expenses may be deducted from gross revenues); NIMMER & NIMMER, *supra*, § 14.03 (overhead expenses may be deducted from gross revenues).

[18] Instead of adding claims to its already pending case in Austin, Womack chose to file claims concerning the Los Rios apartments in a separate case in Houston, even though five of the defendants were the same as in the Austin case, and even though the allegations in the two cases were nearly identical and involved the construction of the same form of the Owner Architect Agreement. Trammell Crow was forced to file a motion to transfer venue from the Southern District of Texas to the Western District of Texas which was granted by the Honorable Kenneth M. Hoyt. 40R: 1-3. Womack has not appealed that ruling.

refusing to relinquish its patently unreasonable legal theories and damages claims up until the day summary judgment was finally entered against it.

This case is similar to *Edwards v. Red Farm Studio Co*., 109 F.3d 80 (1st Cir. 1997). In *Edwards* the First Circuit reversed a district court's denial of an award of attorney's fees to prevailing defendants in a copyright infringement action. The lower court had found that the plaintiff's claims were not unreasonable because the claims were based on "ambiguities" the plaintiff herself had created. *Id.* at 82-83. The First Circuit determined that the district court's ruling "overlooked . . . 'the important role played by copyright defendants,'– preventing copyright owners from restricting rightful publications." *Id.* at 83 (quoting *Fogerty*, 510 U.S. 517, 532 n. 18 (1994)). The court noted that "objective unreasonableness" was not required under *Fogerty*, but determined that the plaintiff's infringement claims were nevertheless unreasonable because the plaintiff's unsuccessful copyright claim ignored the parties' longstanding course of dealing based on "ambiguities" that she herself created.

Similarly, Womack's copyright claims against Trammell Crow were based on the unreasonable notion that the Owner Architect Agreements Womack drafted did not permit Trammell Crow to re-use Womack's architectural drawings, despite the fact that the parties' course of dealings indicated that Trammell Crow did, in fact,

have this right. *See* Section III(G), *supra*. The District Court found that the clear and unambiguous language of the Owner Architect Agreements *did* permit Trammell Crow to re-use the drawings. 27R: 6461, Womack RE: Tab 6. Womack's insistence to the contrary in this litigation was objectively unreasonable.

### 3.    Compensation and deterrence

Trammell Crow also submits that an award in this case would promote the need "to advance considerations of compensation and deterrence." *Fogerty*, 510 U.S. 534 n.19. Womack retained its attorneys on a contingent-fee basis, and may therefore have believed it had nothing to lose even if it did not prevail. By contrast, the attorneys' fees necessarily incurred in defense of Womack's claims were due and owing regardless of the outcome. By distorting a straightforward breach of contract claim into a complex action under the Copyright Act, and by demanding a dollar amount having no basis in law or fact, Womack unreasonably prolonged and complicated this case, thereby greatly increasing the cost of defense.

An award of costs and attorneys' fees in this case would not only compensate Trammell Crow, but may also serve to deter similar conduct by other plaintiffs in the future.

**F.    Attorneys' fees and costs should be awarded to Trammell Crow.**

Trammell Crow submits that the points and authorities above show that it should be allowed recovery of its costs and attorneys' fees under Section 505. Additional fees and costs have necessarily been incurred in connection with this appeal, and Trammell Crow respectfully submits that recovery of these additional fees and costs is also appropriate.[19]

## CONCLUSION

The District Court correctly granted summary judgment in favor of Trammell Crow on Womack's copyright claims. The Owner Architect Agreements Womack drafted expressly and unambiguously granted Trammell Crow the right to use, copy or cause to have copied Womack's drawings and specifications on other sites, and Womack thereby waived its right to sue for copyright infringement. As such, Womack's copyright claims fail as a matter of law and the District Court's grant of summary judgment should be affirmed. Consistent with the foregoing, the District Court correctly denied Womack's motion for summary judgment.

The District Court erred, however, when it denied Trammell Crow's application for an award of costs and attorneys' fees under the Copyright Act. In

---

[19] *See Adsani v. Miller*, 139 F.3d 67 (2d Cir.), *cert. denied*, 525 U.S. 875 (1998).

denying Trammell Crow's Application, the District Court committed legal error, or, in the alternative, abused its discretion by deviating without explanation from this Circuit's "rule" according to which costs and attorneys' fees are "routinely" awarded to a prevailing party. Trammell Crow therefore respectfully requests that the Court reverse the District Court's Order denying Trammell Crow's Application under Section 505, and remand this part of the case to the District Court for a determination of the proper amount of costs and fees to be awarded, including reasonable costs and attorneys' fees incurred on appeal.

Respectfully submitted,
GRAVES, DOUGHERTY, HEARON & MOODY,
a Professional Corporation

By:_____

Richard D. Yeomans
Texas Bar No. 24030014
W. Reid Wittliff
State Bar No. 00791951
Orlesia A. Hawkins
State Bar No. 24004628
515 Congress Avenue, Suite 2300
Austin, Texas 78701
(512) 480-5600
(512) 478-1976 (Fax)

ATTORNEYS FOR TRAMMELL
CROW ENTITIES AND INDIVIDUALS
APPELLEES/CROSS-APPELLANTS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that two true and correct copies of the foregoing, together with a 3-1/2 inch disk containing a copy of the foregoing pursuant to 5th Cir. R. 31.1, were served on the ___ day of October, 2003 to the following counsel of record via certified mail, return receipt requested:

Terry L. Scarborough
Hance Scarborough, Wright,
Woodward & Weisbart, L.L.P.
111 Congress Avenue, Suite 500
Austin, Texas 78701

Rick Harrison
Shelli Wakefield
Fritz Byrne Head & Harrison, L.L.P.
98 San Jacinto, Suite 2000
Austin, Texas 78701

John P. Cahill
Hays McConn Rice & Pickering
1200 Smith Street, Suite 4200
Houston, Texas 77002

Gregory M. Luck
Thomas W. Sankey
Sankey & Luck L.L.P.
6200 Chase Tower, 600 Travis
Houston, Texas 77002

Timothy N. Trop
Trop Pruner & Hu, P.C.
8554 Katy Freeway, Suite 100
Houston, Texas 77024

_____
Richard D. Yeomans

## <u>CERTIFICATE OF COMPLIANCE</u>

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 13,046 words, excluding the part of the brief exempted by Fed R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using WordPerfect for Windows 9.0 Times New Roman Font Face in Font Size 14 was used in the text and Times New Roman 12 point font was used in the footnotes in the preparation of Appellees/Cross-Appellants Brief.

_____
Richard D. Yeomans

Attorney for Appellees/Cross-Appellants
Trammell Crow Entities and Individuals

Dated:  October ____, 2003

U:\WRWittli\A15337.21 - Trammell Crow\APPEAL\TC Brief Final.wpd, 10/21/2003