**United States Court of Appeals**
**Fifth Circuit**
**F I L E D**
**June 22, 2004**
Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 03-50549
_____

WOMACK+HAMPTON ARCHITECTS, L.L.C.,

Plaintiff-Appellant

v.

METRIC HOLDINGS LIMITED PARTNERSHIP; CHILES ARCHITECTS, INC.; TRAMMEL CROW RESIDENTIAL COMPANY; CHRIS WHEELER; TCR OPERATING COMPANY, INC.; TCR METRIC, LP; SOUTH CENTRAL RS, INC.; TCR SOUTH CENTRAL, INC.; TCR SOUTH CENTRAL 1995, INC.; TCR SOUTH CENTRAL DIVISION LP; TCR METRIC CONSTRUCTION LIMITED PARTNERSHIP; GARY CHILES; ROBERT BUZBEE; LEWIS BUNCH; KENNETH J. VALACH; PERRY WILSON; J. RONALD TERWILLIGER,

Defendants-Appellees

_____

WOMACK+HAMPTON ARCHITECTS, L.L.C.,

Plaintiff-Appellant

v.

TRAMMEL CROW RESIDENTIAL; TCR LOS RIOS LIMITED PARTNERSHIP COMPANY; TCR SOUTH CENTRAL 1995, INC.; SDT ARCHITECTS, INC.; LEWIS BUNCH; KENNETH J VALACH; THOMAS STOVALL; JOHN ZELEDON; TIM HOGAN; JERRY DANIELS; PERRY K WILSON,

Defendants-Appellees

_____

CONS. W/ CASE NO. No. 03-50859

WOMACK+HAMPTON ARCHITECTS, L.L.C.,

Plaintiff-Appellee

v.

METRIC HOLDINGS LIMITED PARTNERSHIP; CHILES ARCHITECTS, INC.;
TRAMMEL CROW RESIDENTIAL COMPANY; CHRIS WHEELER; TCR OPERATING
COMPANY, INC.; TCR METRIC, LP; SOUTH CENTRAL RS, INC.; TCR SOUTH
CENTRAL, INC.; TCR SOUTH CENTRAL 1995, INC.; TCR SOUTH CENTRAL
DIVISION LP; TCR METRIC CONSTRUCTION LIMITED PARTNERSHIP; GARY
CHILES; ROBERT BUZBEE; LEWIS BUNCH; KENNETH J. VALACH; PERRY
WILSON; J. RONALD TERWILLIGER,

Defendants-Appellants

_____

WOMACK + HAMPTON ARCHITECTS, L.L.C.,
Plaintiff-Appellee

v.

TRAMMEL CROW RESIDENTIAL; TCR LOS RIOS LIMITED PARTNERSHIP
COMPANY; TCR SOUTH CENTRAL 1995, INC.; LEWIS BUNCH; KENNETH J
VALACH; JOHN ZELEDON; TIM HOGAN; JERRY DANIELS; PERRY K WILSON,

Defendants-Appellants

--------------------
Appeals from the United States District Court
for the Western District of Texas
A-01-CV-591-JN
A-02-CV-793-JN
--------------------

Before DAVIS, BENAVIDES and PRADO, Circuit Judges.

PER CURIAM:*

  Appellant Womack+Hampton Architects, L.L.C. ("WHA") appeals from the district court's grant of summary judgment against it on its copyright infringement claims.  Two of the defendants below cross-appeal from the district court's refusal to grant them attorney's fees.  We affirm both decisions.

---

  *Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

**Background Facts and Procedural History**

From 1996 to 1998, WHA designed five different apartment projects for Appellee/Cross-Appellant Trammell Crow Residential ("TCR").[1] For each project, WHA and TCR signed Owner/Architect Agreements ("Agreements") that provided the terms under which WHA would work. Two paragraphs of these agreements are at the center of the parties' dispute:

> IX. OWNERSHIP AND RE-USE OF DOCUMENTS
> A. The Drawings, Specifications, and other documents prepared by the Architect for this project are the instruments of the Architect's service for use solely with respect to this project and the Architect shall be deemed the author of these documents and shall retain all common law, statutory, and other reserved right [sic], including copyright.
> . . .
> B. The Owner agrees not to use, copy or cause to have copied, the drawings and specifications prepared for this project on subsequent phases or other sites without proper compensation to the Architect, which shall be based upon a mutually agreed upon of [sic] $150.00 per unit (base architectural fee), plus engineering services, plus contingent hourly charges and expenses for plan modifications necessary to adapt these plans and specifications to other sites.

Each agreement contained identical provisions, except that the stated base architectural fee for one of the projects was $250.

After all five projects were completed, TCR hired two different architecture firms, Chiles Architects, Inc. and SDT Architects, to design two projects – one in Austin (called The North Bend) and one in Plano, Texas (called Los Rios). In

---

[1] WHA sued several related Trammell Crow entities. We will refer to all the entities collectively as TCR.

designing The North Bend, Chiles used some of WHA's schematics. Similarly, in designing Los Rios, SDT used WHA's schematics from an earlier project.

On September 30, 1998, after discovering TCR's actions, WHA sent TCR a letter demanding that TCR pay the reuse fee set forth in the Agreement. The letter began:

> As you know, Chiles Architects, Inc. has prepared, without our knowledge, Construction Documents for Trammell Crow Residential utilizing plans which are copyrighted property of Womack+Hampton Architects. In the past, on another development in Austin, an agreement was reached between Womack+Hampton Architects, Trammell Crow Residential and Chiles Architects allowing him to utilize our designs on that development for a Use Fee which is common in this industry. Unfortunately, no such agreement was requested nor exists for the use of our Windfern designs.
>
> In an effort to rectify what is an improper use of our work product, we have contacted Mr. Chiles to reach a settlement agreement. We would like your cooperation and agreement to this offer of settlement . . .
>
> (4) Our original agreement with Trammell Crow Residential, Houston, for Windfern calls for a $150.00 per unit Re-Use fee for future use of our plans. Because of our long relationship with your company, and the fact that the plans were redrafted by Mr. Chiles, we are willing to accept one half of that amount, i.e. $75.00 per unit for a total Use Fee of $27,450.00. Any future reuse of this product will be priced per the original written agreement.[2]

TCR replied by asking WHA to waive the base architectural fee of $150 per unit. TCR never paid any fee and contends that because it did not hear back from WHA, it understood that WHA had

---

[2] No party objected to using this settlement offer as evidence. In fact, all the parties cite it as evidence.

agreed to waive the fee.

WHA originally sued TCR and Chiles and Chiles's principal[3] for copyright infringement in the Western District of Texas. WHA filed an additional suit against TCR, SDT, and SDT's principals,[4] based on essentially the same issues, in the Southern District of Texas. The second case was transferred to the Western District and then consolidated with the original Western District case. Neither suit contained a claim for breach of contract, and WHA has repeatedly stated that it did not bring a contract claim.

TCR filed two motions for summary judgment. In the first motion, TCR argued that WHA's damages were limited to the reuse fee contained in the Owner/Architect Agreements. The district court referred this motion to the magistrate judge, who recommended granting it. After the cases were consolidated, the magistrate issued an amended report and recommendation which expanded the same conclusion to the claims related to SDT's use. WHA filed objections, but the district court accepted the magistrate's recommendation.

Shortly after the district court's summary judgment order, TCR, Chiles, and SDT filed additional motions for summary judgment seeking dismissal of all of WHA's claims. These motions

---

[3]We will collectively refer to the company and its principal as "Chiles."

[4]We will collectively refer to the company and its principal as "SDT."

contended that the contract permitted the reuse and that TCR's failure to pay the reuse fee was only a breach of contract, not copyright infringement. The magistrate recommended granting this motion. The district court accepted the magistrate's recommendation over WHA's objections and granted summary judgment on all of WHA's claims. WHA timely filed a notice of appeal. TCR and Chiles also moved for attorney's fees. The district court denied these motions. TCR and Chiles cross-appeal from the denial.

We review the district court's grant of summary judgment de novo. Hanks v. Transcon. Gas Pipe Line Corp., 953 F.2d 996, 997 (5th Cir. 1992). The district court's decision concerning attorney's fees is reviewed for an abuse of discretion. Bridgmon v. Array Sys. Corp., 325 F.3d 572, 577-78 (5th Cir. 2003).

**Interpreting the Agreements**

The parties agree that the reuse provision provides a copyright license. They disagree, however, about the scope and meaning of that license, as well as when it arose. Generally, licensing agreements, like other contracts, are interpreted under state law. Fantastic Fakes, Inc. v. Pickwick Int'l, Inc., 661 F.2d 479, 483 (5th Cir. Unit B 1981) (applying Georgia law to a license agreement and noting that "application of Georgia rules to determine parties' contractual intent is not preempted by either copyright act nor does their application violate federal

copyright policy"); see also Kennedy v. Nat'l Juvenile Detention Ass'n, 187 F.3d 690, 694 (7th Cir. 1999) ("[n]ormal rules of contract construction are generally applied in construing copyright agreements").

When interpreting unambiguous contracts,[5] Texas courts "give terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense," in order to "enforce the unambiguous document as written." Heritage Res., Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex. 1996). The goal of interpretation is to give effect to the parties' intentions as expressed in the contract. Sun Oil Co. (Del.) v. Madeley, 626 S.W.2d 726, 727-28 (Tex. 1981). Thus, "[i]n the ordinary case, the writing alone will be deemed to express the intention of the parties." Id. at 728. "Only where a contract is first found to be ambiguous may the courts consider the parties' interpretation." Id. at 732. Texas courts read the contract as a whole and give each part of the contract meaning. Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 133 (Tex. 1994). Interpretation of unambiguous contracts is a question of law.

---

[5] All parties agree that the Agreements are unambiguous. Under Texas law, if a contract "is so worded that it can be given a certain or definite legal meaning, it is not ambiguous." Sun Oil Co. (Del.) v. Madeley, 626 S.W.2d 726, 732 (Tex. 1981). Parties' disagreement about how to interpret a contract does not make it ambiguous. Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 134 (Tex. 1994)("not every difference in the interpretation of a contract or an insurance policy amounts to an ambiguity").

DeWitt County Elec. Coop., Inc. v. Parks, 1 S.W.3d 96, 100 (Tex. 1999).

**Does the reuse provision permit TCR to hire architects other than WHA?**

Under WHA's interpretation, the reuse provision requires TCR to hire WHA on any subsequent project for which TCR wanted to reuse the plans. WHA bases this reading on the reuse section's inclusion of engineering fees, hourly charges, and expenses along with the $150 (or $250) reuse fee. Specifically, this language provides that, upon reuse, TCR must pay:

> proper compensation to the Architect,[6] which shall be based upon a mutually agreed upon of [sic] $150.00 per unit (base architectural fee), plus engineering services, plus contingent hourly charges and expenses for plan modifications necessary to adapt these plans and specifications to other sites.

According to WHA, reading the Agreements to permit anyone other than WHA to reuse and modify the plans would render meaningless the contract provision about paying for engineering services, hourly charges, and expenses. WHA concludes that because of this, the entire provision can only apply to WHA.

In contrast, Appellees argue that this clause means that they had the right to reuse WHA's designs; in return, they only had to pay the base reuse fee. Appellees argue that the reuse clause would be meaningless (and pointless) if it limited the

---

[6]The Agreements identify WHA as "the Architect."

reuse to WHA; WHA already had the right to reuse. According to Appellees, such an interpretation runs afoul of the Texas contract rule that all terms of a contract should be given effect, the same rule that WHA cites when discussing the engineering fees and other costs.

At issue, then, is the scope of the reuse provision and the meaning of the right to use. WHA analogizes to, and the district court distinguished, a Ninth Circuit case interpreting the extent of a right to use, S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081 (9th Cir. 1989). In that case, S.O.S., which provided computer hardware and software for payroll companies, entered into a license with Payday, a payroll services company. Id. Under this agreement, Payday would use S.O.S. software on Payday's independent accountant's computer, rather than installing a computer in its office. Id. The agreement provided that Payday "is acquiring the right of use, SOS retains all rights of ownership." Id. Payday later hired former S.O.S. employees to create programs derived from S.O.S.'s program and install those programs on Payday's computer. S.O.S sued for copyright infringement, among other things. Id. at 1084. The Ninth Circuit concluded that the license's right of use did not cover S.O.S.'s conduct:

> In the context of the parties' entire agreement, it is clear that the 'right of use' was not intended to refer to copyright use. The contract does not refer explicitly to copyright or to any of the copyright owner's exclusive rights. Payday clearly was concerned solely with

>obtaining output in the form of processing payroll information for its customers.

Id. at 1088. The court emphasized that this determination was based on the facts and noted that "[w]ere this a license between S.O.S. and another software writer, 'right of use' might be more properly construed to include uses, such as modification of the software, otherwise reserved to the copyright holder." Id. at 1088 n.8; see also Kennedy, 187 F.3d at 695 (license granting a client "the right to use, duplicate and disclose, in whole or in part, such materials in any manner for any purpose whatsoever" gave client the right to create derivative works from the copyrighted work).

Unlike the use in S.O.S., here it is clear that the reuse provision anticipates copyright use, specifically use of the copyrighted plans for other projects. Unlike the contract in S.O.S., the Agreement refers to copyright, and the parties were addressing reuse of the plans themselves, not of the information derived from a copyrighted work.

Additionally, both sides cite evidence outside the contract to show the existence of earlier dealings and the parties' interpretation of the contracts.[7] Initially, the parties refer to the September 30, 1998 letter that WHA sent to TCR. In particular, WHA points to the section of the letter referring to

---

[7]As noted earlier, Texas law does not permit courts to consider parties' interpretations of unambiguous contracts. Sun Oil, 626 S.W.2d at 732.

a past occurrence to support its argument that no other architects were permitted to use its design:

> In the past, on another development in Austin, an agreement was reached between Womack+Hampton Architects, Trammell Crow Residential and Chiles Architects allowing [Chiles] to utilize our designs on that development for a Use Fee which is common in this industry. Unfortunately, no such agreement was requested nor exists for the use of our Windfern designs.

In contrast, however, another part of this letter, cited by Appellees, suggests that the reuse fee covered exactly this situation:

> Our original agreement with Trammell Crow Residential, Houston, for Windfern calls for a $150.00 per unit Re-Use fee for future use of our plans. Because of our long relationship with your company, and the fact that the plans were redrafted by Mr. Chiles, we are willing to accept one half of that amount, i.e. $75.00 per unit for a total Use Fee of $27,450.00. Any future reuse of this product will be priced per the original written agreement.

Thus, the same letter supports both interpretations of the agreement. As additional outside evidence of interpretation, WHA cites the previous agreement referred to in the letter. The record contains only one other agreement. This agreement is between TCR and Chiles and relates to a project that TCR had been working on "for several months" and that Chiles took over, using WHA's design concepts. Thus, this is not necessarily a situation where the reuse provision would apply; it was not clearly another site or subsequent phase. Under the WHA/Chiles agreement, Chiles could not reproduce the designs on other projects without WHA's approval and provided that WHA was to receive credit as the

"Building Design Architect." The agreement did not require Chiles to pay WHA for using the design concepts on that project, but it provided that "if Chiles chooses to re-use the plans and designs prepared for this Project on subsequent projects, Chiles, or Chiles's Client, shall pay [WHA] the sum of $75.00 for each unit to be placed on the site. The base re-use architectural design fee shall not be less than $10,000.00 for the use of the designs." The contract indicates that WHA would enter into a separate agreement with TCR, but no agreement is in the record.

In sum, the outside evidence is of limited use. The previous agreement is distinguishable from the situation here, and the September 1998 letter supports both interpretations. Because this evidence does not help us, we end up relying on the contract language itself. And like the district court, we conclude that the language permitted the use.

Even construed narrowly, the contract language does not support WHA's interpretation that TCR was required to use WHA on any future reuse of the plans. The Agreements provided that TCR could reuse the work and also required it to pay WHA a fee to do so. TCR's reuse appears to be consistent with that anticipated under the contract.

**Condition Precedent**

WHA also argues that the district court erred when it refused to construe payment of the reuse fee as a condition

precedent to TCR's right to reuse. Texas law disfavors interpreting a contract provision as a condition precedent, and "forfeiture by finding a condition precedent is to be avoided when another reasonable reading of the contract is possible." Criswell v. European Crossroads Shopping Ctr., Ltd., 792 S.W.2d 945, 948 (Tex. 1990). The Texas Supreme Court described the usual situation in which a court will interpret a provision as a condition precedent:

> In order to make performance specifically conditional, a term such as "if", "provided that", "on condition that", or some similar phrase of conditional language must normally be included. Landscape Design v. Harold Thomas Excavating, 604 S.W.2d 374, 377 (Tex.Civ.App.--Dallas 1980, writ ref'd n.r.e.). If no such language is used, the terms will be construed as a covenant in order to prevent a forfeiture. While there is no requirement that such phrases be utilized, their absence is probative of the parties intention that a promise be made, rather than a condition imposed. See Hohenberg Bros. Co. v. George E. Gibbons & Co., 537 S.W.2d 1, 3 (Tex. 1976).

Criswell, 792 S.W.2d at 948.

Similarly, when analyzing copyright licenses, many courts have refused to interpret payment as a condition precedent. I.A.E., Inc. v. Shaver, 74 F.3d 768, 778 (7th Cir. 1996); Effects Assoc., Inc. v. Cohen, 908 F.2d 555, 559 n.7 (9th Cir. 1990) ("[n]or can we construe payment in full as a condition precedent to implying a license."); Irwin v. Am. Interactive Media, Inc., 1994 WL 394979 at *4, 1994 U.S. Dist. LEXIS 16223 (C.D. Cal. April 14, 1994); cf. Graham v. James, 144 F.3d 229, 237 (2d Cir. 1998) (payment of royalties not a condition precedent). WHA has

not cited any cases in which payment under a license was found to be a condition precedent.

Despite the lack of caselaw involving payment, WHA contends that because the general conveyance was limited to the individual projects, the reuse right only arose after TCR paid a fee. WHA does not, however, cite specific language in the Agreements that would indicate that the reuse fee was a condition precedent and not merely a promise to pay.

Instead, WHA relies on McRoberts Software, Inc. v. Media 100, Inc., No. IP99-1577-C-M/S, 2001 WL 1224727(S.D. Ind. Aug. 17, 2001). McRoberts involved a software licensing agreement; the question was whether the defendant could use the plaintiff's software without using a particular kind of hardware, called Media 100. 2001 WL 1224727 at *10. In other words, the parties argued over whether use of Media 100 hardware was a condition of the license. The relevant language authorized the defendant to, among other things, "distribute executable code versions of [modified] CG Option 2.0 when integrated with DTI's Media 100 hardware and software . . . and such versions shall be licensed only for use on such hardware." Id. (emphasis omitted). Reading this language, the court concluded that without the integration with the Media 100 hardware, the defendant never obtained a license to use plaintiff's software. Id.

As WHA concedes, much of the McRoberts decision depends on the conditional language in the license – in particular, the use

of the word "when."  Thus, McRoberts resembles the other cases involving conditions precedent.  WHA argues that although its contract does not contain conditional language, its case is stronger than the McRoberts plaintiff's case because the McRoberts contract was a conveyance, whereas the reuse section consisted of words of reservation with a conditional exception.  WHA contends that reservations are more narrowly construed than conveyances.  Despite WHA's claims, this distinction cannot override the absence of language in the Agreements suggesting that payment is a condition precedent.

In short, WHA has not cited specific language in the Agreements that would suggest that the fee is a condition precedent.  Although it argues that dealings outside the contract indicate the existence of a condition precedent, these dealings are not persuasive, particularly in light of the cases finding a payment term merely to be a promise.  The district court, thus, did not err in refusing to read payment of the reuse fee as a condition precedent.

**Did the reuse license extend to Chiles and SDT?**

Lastly, WHA argues that, even if a reuse license existed, this license was personal to TCR and non-transferable without WHA's consent.  In support, WHA cites a case that holds that non-exclusive patent licenses are non-transferrable.  In re CFLC, Inc., 89 F.3d 673, 679 (9th Cir. 1996).  Based on an analogy to

patent law, the Ninth Circuit has also indicated that copyright licenses are not transferrable. <u>Harris v. Emus Records Corp.</u>, 734 F.2d 1329 (9th Cir. 1984); <u>see also SQL Solutions, Inc. v. Oracle Corp.</u>, No.C-91-1079, 1991 WL 626458,(N.D. Cal. Dec. 18, 1991). Thus, WHA argues that Chiles's and SDT's use gives rise to a separate infringement claim.

The magistrate concluded, however, that the reuse provision specifically anticipated that third parties would be involved in the reuse. Specifically, the magistrate pointed to the phrase "cause to have copied" and noted that reuse on another site would require third-party involvement. TCR, too, provides evidence that to "use . . . the drawings and specifications prepared for this project on subsequent phases or other sites" would necessarily require TCR to hire an architect to adapt the plans to fit the other site. Use consistent with a license is a defense to an infringement claim. <u>Lulirama Ltd., Inc. v. Axcess Broadcast Svs., Inc.</u>, 128 F.3d 872, 879 (5th Cir. 1997).

Further, TCR's hiring of Chiles and SDT does not appear to be a transfer of the rights contained in the license. <u>Cf. Hogan Sys., Inc. v. Cybresource, Int'l</u>, 158 F.3d 319, 323 (5th Cir. 1998) (bank's use of independent contractors to work on licensed software not a transfer of license to contractor because "all of the work being done inures to the benefit of [the bank]"). The use here is consistent with the license and is not an impermissible transfer.

16

**Cross-Appeal on Attorney's Fees**

TCR and Chiles appeal the district court's denial of their motions for attorney's fees. A court may award attorney's fees to a prevailing party under the Copyright Act. 17 U.S.C. § 505. Although routinely awarded, these fees are discretionary. <u>Hogan</u>, 158 F.3d at 325. That these fees are routinely awarded, however, does not mean that they are automatically awarded. <u>See, e.g.</u>, <u>Creations Unlimited, Inc. v. McCain</u>, 112 F.3d 814, 817 (5th Cir. 1997) (noting that the Supreme Court "repudiated the 'British Rule' for automatic recovery of attorney's fees by the prevailing party" and holding that the district court did not abuse its discretion in denying fees). The Supreme Court has listed several non-exclusive factors that are relevant to the fee determination: "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." <u>Fogerty v. Fantasy, Inc.</u>, 510 U.S. 517, 535 n.19 (1994) (quoting <u>Lieb v. Topstone Indus., Inc.</u>, 788 F.2d 151, 156 (3d Cir. 1986)). In <u>Fogerty</u>, the Supreme Court determined that these fees should be awarded evenhandedly to both prevailing plaintiffs and defendants. <u>Id</u>. at 534. The district court's decision concerning attorney's fees is reviewed for an abuse of discretion. <u>Bridgmon v. Array Sys. Corp.</u>, 325 F.3d 572, 577-78

(5th Cir. 2003).

In this case, the district court accepted the magistrate's report and recommendation that contained a thorough analysis of the above factors.  First, the magistrate determined that WHA's claim was not frivolous, citing three reasons for this conclusion.  The magistrate determined that WHA's claims had some case law support, specifically S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081 (9th Cir. 1989).  The magistrate also noted that the sheer number of hours TCR's lawyers claimed to have spent argued against frivolousness.[8]  Finally, in response to TCR and Chiles' arguments that WHA had requested frivolously large amounts of damages, the magistrate noted that WHA's method of calculating damages was permissible under the Copyright Act.  Based on the same factors, the magistrate concluded that WHA's claims were not legally or factually objectively unreasonable.

Examining motivation, the magistrate also concluded that Chiles presented no evidence that the suit was improperly motivated; Chiles only cited WHA's three-year delay in bringing suit.  Although Chiles argued that WHA's purpose was "to recover as much money as possible and punish the Crow defendants," the magistrate noted that "[a]s even the Chiles Defendants concede, the desire to recover damages underlies the vast majority of

---

[8]The magistrate cited Christian v. Mattel, Inc., 286 F.3d 1118, 1132 n.12 (9th Cir. 2002) for the idea that defending a frivolous case should not require an excessive amount of fees.

lawsuits."

Finally, the magistrate concluded that awarding TCR and Chiles fees would not advance considerations of compensation and deterrence. In fact, TCR has essentially conceded that it did something wrong – it did not pay the required reuse fee. It is difficult to see how rewarding a company that breached its contract to pay an author could advance the Copyright Act's purposes. In light of its analysis of these factors, the district court did not abuse its discretion in declining fees, despite the rule that fees are routinely granted in copyright cases.

For these reasons, we affirm the decisions of the district court granting summary judgment on WHA's copyright infringement claims and denying TCR and Chiles's requests for attorney's fees. AFFIRMED.